**JOHN L. BURRIS, Esq., SBN 69888**
**ADANTE D. POINTER, Esq., SBN 236229**
**LATEEF H. GRAY, Esq., SBN 250005**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport St., Suite 1120
Oakland, California 94621
Telephone:   (510) 839-5200
Facsimile:    (510) 839-3882
John.Burris@johnburrislaw.com
Adante.Pointer@johnburrislaw.com
Lateef.Gray@johnburrislaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEAN MOORE, an individual<br><br>  Plaintiff,<br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; KENNETH CHA, individually and in his capacity as a City of San Francisco Police Officer; COLIN PATINO, individually and in his capacity as a City of San Francisco Police Officer; and DOES 1-50, inclusive.<br><br>  Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES<br>(42 U.S.C § 1983)<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. This civil rights lawsuit arises out of the unlawful January 11, 2017 shooting of Sean Moore by San Francisco Police Officers Kenneth Cha and Colin Patino while Plaintiff was standing unarmed on his front porch.

2. Fortunately, the Defendant Officers' body worn cameras captured this egregious display of police abuse leaving many of the facts undisputed. For example, the footage clearly shows the Officers violated their professional training and SFPD Policy by taunting and attempting to provoke Mr. Moore, who is mentally disabled, into a confrontation. The Officers then elected to use pepper spray and their batons to assault Mr. Moore because he lawfully expressed his desire for the

Officers to leave his property and thereafter attempted to exercise his right to no longer speak with them and go back inside of his home. Instead of respecting his rights, the Defendant Officers continued to antagonize Mr. Moore until the point Officer Cha shot Mr. Moore twice for no lawful reason. Officer Cha, apparently aware he unlawfully shot and perhaps fatally injured Mr. Moore, immediately called SFPD dispatch after the shooting and requested a lawyer be sent to the scene to represent him.

3. Adding the utmost insult to his injuries, SFPD arrested and then lobbied the San Francisco District Attorney's Office to have Mr. Moore criminally prosecuted on bogus felony charges for supposedly assaulting and battering the Officers. Incredulously, the San Francisco District Attorney's Office obliged SFPD's request and charged Mr. Moore with several felonies, despite having the Officers' bodycam videos, which prove Mr. Moore was well within his rights and the Officers' conduct unlawful and a violation of their training and SFPD Policy. SFPD and the SF District Attorney's Office decision to criminally prosecute Mr. Moore forced Mr. Moore to remain in custody, critically injured, under a million dollar bail until the bogus criminal case was finally dismissed after the SF Public Defender's Office challenged the validity of the trumped up charges.

## JURISDICTION

4. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the City and County of San Francisco, which is within the judicial district of this Court.

5. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1367 over the state law claims which are so related to federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

6. Venue is proper in this Court under 28 U.S.C. Section 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

7. Plaintiff SEAN MOORE (hereinafter "Plaintiff"), is an individual residing in SAN FRANCISCO, CALIFORNIA. Plaintiff suffers from mental health disabilities, including but not limited to being a diagnosed schizophrenic and at all relevant times was a qualified individual as

defined by Title II of the Americans with Disabilities Act.

8. Defendant CITY AND COUNTY OF SAN FRANCISCO (hereinafter "Defendant City") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California, and at all times herein mentioned, Defendant City has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the San Francisco Police Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant City was the employer of all named Defendants and all DOE Defendants, individually and as peace officers.

9. Defendant KENNETH CHA (hereinafter "Defendant Cha") is, and at all times mentioned herein, a police officer for the City of San Francisco, and is sued in his individual and official capacity.

10. Defendant COLIN PATINO (hereinafter "Defendant Patino") is, and at all times mentioned herein, a police officer for the City of San Francisco, and is sued in his individual and official capacity.

11. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control and in violation of public policy. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiff will ask leave to amend this complaint subject to further discovery.

12. In doing the acts alleged herein, Defendants, and each of them acted within the course and scope of their employment for the City and County of San Francisco.

13. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

14. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

**ADMINISTRATIVE PREREQUISITES**

15. Plaintiff is required to comply with an administrative tort claim requirement under California law. Plaintiff filed a claim against the City of San Francisco on July 5, 2017. The City of San Francisco rejected Plaintiff's claim on July 28, 2017. Plaintiff has exhausted all administrative remedies pursuant to California Government Code Section 910.

**STATEMENT OF FACTS**

16. On January 6, 2017, at approximately 3:51 a.m., Mr. Choy called the San Francisco Police Department's non-emergency number to report that his next-door neighbor, Plaintiff, Mr. Sean Moore, had allegedly violated the terms of a temporary restraining order that Mr. Choy had against Mr. Moore by knocking on the wall that adjoined their homes. Unbeknownst to Mr. Moore, SFPD Police Dispatch assigned SFPD Officers Kenneth Cha and Colin Patino to investigate Mr. Choy's claim.

17. At approximately 4:15 a.m., the Officers arrived in front of Mr. Moore and Mr. Choy's homes. Officer Patino went to speak to Mr. Choy, while Officer Cha went to Mr. Moore's home. Mr. Choy greeted Officer Patino and gave him a copy of the temporary restraining order. As Officer Cha started to read the temporary restraining order, he heard yelling coming from next door. He abruptly left Mr. Choy and ran over to Mr. Moore's home after only speaking to Mr. Choy for 30 seconds. Given the brevity of their interaction, Mr. Choy was unable to give Officer Patino any details about what had taken place that morning or the history between he and Mr. Moore.

18. Next, Officer Patino climbed the stairs to the second floor landing of Mr. Moore's home and saw Officer Cha standing in front of Mr. Moore's front door. Mr. Moore, who was standing inside his home but on the other side of a metal security gate had questioned Officer Cha as to why he was at his door at such an early hour in the morning and ordered him to leave. Officer Patino, who was now on the landing, asked Mr. Moore whether he was going to listen to what the Officers had to say. In response, Mr. Moore repeatedly told them to hurry up with what they had to say and to leave.

19. Mr. Moore displayed obvious signs of being mentally impaired as he was speaking in a loud, rapid tone and would then commence to mumbling, repeating himself and making nonsensical statements consistent with his diagnosed schizophrenia. The Defendant officers are professionally trained to de-escalate situations such as these by utilizing time, distance and their resources. Unfortunately, the Defendants ignored their training.

4

20. Instead, the Defendant Officers pressed Mr. Moore to confirm his name, which he did. He went on to tell the Officers he was taking his garbage out and to get off of his stairs. The Defendants responded by telling Mr. Moore they were not going to leave. Mr. Moore told the Defendants multiple times to leave, get off his porch and that he did not want to talk to them. He then went to walk inside his home but was ordered to come back.

21. Defendant Patino asked Mr. Moore whether he violated the temporary restraining order, to which Mr. Moore told him "no." Defendant Patino then began to read the temporary restraining order aloud to Mr. Moore, who explained that he had not had any contact with Mr. Choy and denied violating the temporary restraining order.

22. The Defendant Officers did not have probable cause to arrest Mr. Moore as they neither personally observed Mr. Moore violate the temporary restraining order or commit any crimes, nor had Mr. Choy asked to place Mr. Moore under citizen's arrest. Without legal authority to arrest Mr. Moore, the Defendants were obligated to heed his demands and get off his property. Instead, they determined to arrest Mr. Moore and refused to leave.

23. Mr. Moore, frustrated by the Defendant Officers' refusal to leave and constant badgering, told the Defendants he was going to call 911 to have them removed from his property and closed his front door. By the time Mr. Moore closed his door, he had told the Officers over 20 times to go away and leave his property. The Defendants openly scoffed and laughed at Mr. Moore further escalating the situation.

24. Next, the two Defendants made their way down Mr. Moore's steps while Defendant Patino read the restraining order aloud. Defendant Cha continued to shine his flashlight upon Mr. Moore's door, prompting him to once again demand the Officers leave from in front of his home. The Defendant Officers decided to confront Mr. Moore and walked back up his stairs. They then proceeded to demand Mr. Moore listen as Defendant Patino began reading the temporary restraining order aloud again.

25. The Defendants' conduct continued to increasingly aggravate Mr. Moore until he reiterated that he had not bothered Mr. Choy or violated the terms of the temporary restraining order. The Defendants began bickering with Mr. Moore and demanded that he continue listening to the terms of the temporary restraining order. Mr. Moore became even more upset and told the Defendants that he was aware of the upcoming court date concerning the temporary restraining order, that he was done talking to them and to get off his stairs.

5

26. Nevertheless, the Defendant Officers continued to trespass on Mr. Moore's property and remained at his front door. Mr. Moore opened the metal gate and for the 39th time told the Defendant Officers to get off his stairs. Defendant Cha and Patino refused to leave and threatened to pepper spray him. At no time did Mr. Moore advance on the Defendants or attempt to make contact with them. Instead, he remained standing in the same place until Defendant Cha attacked Mr. Moore by spraying him with his pepper spray. Defendant Cha's poor decision making and tactics caused the spray to fly into Defendant Patino's, as well as Mr. Moore's, eyes, causing both men to be partially blinded. Mr. Moore sensing the threat the Defendant's posed to his safety tried to flee back into his home.

27. The Defendant Officers pursued Mr. Moore and he in turn put up his foot to fend off their attack. Unable to physically restrain Mr. Moore, the Officers went back down the stairs to the sidewalk. The Defendants ordered Mr. Moore, who now had the temporary restraining order in his hand, to give it back. Mr. Moore attempted to comply, but was challenged by the Defendants.

28. Defendant Cha called an ambulance to the scene but failed to call for any additional resources or the critical incident team. Defendant Patino told Mr. Moore to give the temporary restraining order back. Mr. Moore implored the Officers to leave and Defendant Patino told Mr. Moore he was under arrest. Mr. Moore, reeling from the effects of the pepper spray, told the Defendants he could not see and that he needed medical attention. The Defendants continued to demand Mr. Moore come back outside and cursed at him.

29. Mr. Moore walked up to the gate and pushed the temporary restraining order through the gate toward the Defendants, all the while Defendant Cha had his flashlight shining in Mr. Moore's eyes. The Defendants determined they were going to break the lock on the security gate to gain access to Mr. Moore's home to arrest him and began walking up the stairs.

30. Mr. Moore, still blinded by the pepper spray, told the Defendants he couldn't see and that he just wanted to get the whole incident over with. He opened his gate and stepped outside. Mr. Moore continued to shield his eyes from Defendant Cha's flashlight while the Defendant Officers yelled at him to "come on" multiple times. At this point, Defendant Cha racked his gun in anticipation that he was going to shoot Mr. Moore.

31. Mr. Moore was holding a cordless phone in his hands. The battery cover to the phone fell off and bounced down the stairs. Mr. Moore slowly walked down the stairs to get it when the Defendant Officers rushed toward him with their batons out ready to beat him. Mr. Moore, once

6

again sensing the danger the Defendants posed to his safety retreated back up his stairs to the landing.

32. The Defendant Officers made it to the top of the stairs where they once again confronted Mr. Moore. Defendant Patino raised his baton over his head and struck Mr. Moore with his baton at least two times. Mr. Moore did not move and braced himself for the impact. Defendant Patino then proceeded to grab Mr. Moore by his shoulder and tried to pull him down the stairs. Defendant Patino was somehow injured during the fracas and fell back and down the stairs.

33. Defendant Cha advanced forward with his gun pointed at Mr. Moore. Mr. Moore prepared himself for the next attack by lifting his foot up. Without any warning or lawful cause, Defendant Cha shot Mr. Moore twice, critically wounding the unarmed man.

34. Defendant Cha apparently knew he had unlawfully shot and critically injured Mr. Moore as the first request he made to dispatch after the shooting was to ask for a Police Officer Association representative to come to the scene to provide him counsel. He went on to advise dispatch he shot Mr. Moore because he was being overpowered. Defendant Patino, who apparently knew Defendant Cha's false statement would be contradicted by the video from their body worn cameras, scolded his partner and told him "hey, hey, hey don't say that!"

35. Mr. Moore was later arrested and taken into custody. He was placed inside of an ambulance where he was forced to wait for over an hour before leaving the scene to go to the hospital. In fact, Mr. Moore had to remind the assembled Officers that he had been shot twice and needed urgent medical treatment.

36. The San Francisco Police Department lobbied the San Francisco District Attorney's Office for Mr. Moore to be charged with several felonies arising out this incident, despite Mr. Moore being the victim of the Defendant Officers' poor tactics and excessive use of force. The SF District Attorney's Office obliged the SFPD's request and aggressively charged Mr. Moore with over 10 felonies. Mr. Moore, unable to post a million dollar bond, was therefore forced to languish in jail for several months while he recuperated from his life threatening injuries. Ultimately, all of the bogus charges were dismissed after the SF Public Defender's Officer challenged the validity of the trumped up charges.

37. To this day, Mr. Moore continues to suffer from the injuries he attributes to the incident, including but not limited to: severe emotional distress, pain, suffering, permanent physical disfigurement and partial physical disability.

38. Mr. Moore was known to have mental challenges that were easily identifiable and the Defendant Officers did not properly assess or approach the situation with that understanding. Instead, Defendants Cha and Patino utilized negligent police tactics, including but not limited to disregarding de-escalation techniques and not calling the Crisis Intervention Team, thereby escalating the situation and ultimately resulting in the mentally distressed man being shot.

39. During the subject incident, Mr. Moore never threatened anyone, nor did he pose a substantial risk of causing anyone death or serious bodily injury. As such, the use of deadly force by Defendant Cha was unjustified.

40. Plaintiff is informed, believes and thereon alleges that CCSF knew, or had reason to know by way of actual or constructive notice, that SFPD officers are inadequately trained in the proper assessment and use of deadly force, which has resulted in the unwarranted death and/or injury of citizens.

41. Plaintiff is informed, believes and thereon alleges that CCSF knew, or had reason to know by way of actual or constructive notice, that SFPD supervisory staff and/or training personnel fail to adequately supervise new police officers and/or police officer trainees.

42. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend his complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

## MONELL ALLEGATIONS

43. Based upon the principles set forth in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), Defendant City is liable for all injuries sustained by Plaintiff as set forth herein. Defendant City bears liability because its policies, practices and/or customs were a cause of Plaintiff's injuries. Defendant City and its officials maintained or permitted one or more of the following official policies or customs:

    a) Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the use of deadly force;

    b) Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the use of force, arrest, search, and detention;

c) Failure to adequately discipline or retrain officers involved in misconduct;

d) Selection, retention, and assignation of officers with demonstrable propensities for excessive force, violence, dishonesty, and other misconduct;

e) Encouragement of officers in the belief that they can violate the rights of persons, such as Plaintiff, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

f) Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint and, in particular, the ratification of the unjustified shooting of Plaintiff.

## **DAMAGES**

44. As a proximate result of Defendants' conduct, Plaintiff was mentally and emotionally injured and damaged as a consequence of Defendants' violation of Plaintiff's federal civil rights under 42 U.S.C. § 1983, the Fourth Amendment and the ADA.

45. Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is entitled to an award of reasonable attorney's fees and/or costs pursuant to statute(s) in the event that Plaintiff is the prevailing parties in this action under 42 U.S.C. Sections 1983, 1985, 1986, and 1988.

46. The conduct of the Defendant Police Officers was malicious, wanton, and oppressive. Plaintiff is therefore entitled to an award of punitive damages against said Defendant Officers.

9

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(42 U.S.C. Section 1983)**
**(Violation of the Fourth Amendment of the United States Constitution-Unlawful Seizure)**
**(Plaintiff v Defendants PATINO and CHA)**

47. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 46 of this Complaint.

48. Defendants' above-described conduct violated Plaintiff's right as provided for under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures because Defendants lacked the requisite probable cause to arrest Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**(42 U.S.C. Section 1983)**
**(Violation of the Fourth Amendment of the United States Constitution-Excessive Force)**
**(Plaintiff v Defendants PATINO and CHA)**

49. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 48 of this Complaint.

50. 42 U.S.C. § 1983 provides in part "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

51. Plaintiff had a firmly established right under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive force being used against him.

52. Defendants' actions as described herein resulted in the deprivation of these constitutional rights.

53. Defendants, acting in the performance of their official duties, used excessive force against Plaintiff.

54. On January 6, 2017, Plaintiff posed no threat to the Defendant Officers when Defendant Officers seized and used excessive force against Plaintiff.

55. The Defendants' use of pepper spray, a baton and their firearms to assault, beat and shoot Plaintiff was unnecessary, unreasonable, and excessive, and constituted excessive uses of force.

56. There was no need to use such extreme force against Plaintiff.

57. In using excessive force, the Defendant Officers were acting in accordance with widespread informal practices and customs maintained by the City and SFPD, as elaborated upon in the paragraphs above.

58. Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that the use of force in these circumstances was illegal under clearly established law.

59. The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, humiliation, and further damages according to proof at the time of trial.

60. The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. Section 1983)**
**(Violation of the 1st Amendment of the U.S. Constitution-Questioning Police Action)**
**(Plaintiff v Defendants PATINO and CHA)**

61. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 61 of this Complaint.

62. At all times relevant herein, Plaintiff had a right to free speech and to protest police action as afforded and provided by the First Amendment and protected against retaliation by the same and 42 U.S.C. § 1983.

63. Upon information and belief, Defendants chose to use and/or used excessive force against Plaintiff in retaliation for Plaintiff's exercising of his right to protest police action, liberty and free movement.

64. The conduct of Defendants was willful, wanton, malicious, and with reckless disregard for the rights and safety of Plaintiff.

65. As a result of their misconduct, Defendants are liable for Plaintiff's physical, mental, and emotional injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Municipal Liability for Unconstitutional Custom or Policy (*Monell*)–42 U.S.C. section 1983)**
**(Plaintiff v Defendants CITY and DOES 26-50)**

66. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 65 of this Complaint.

67. Plaintiff is informed and believes and thereon alleges that high ranking CITY AND COUNTY OF SAN FRANCISCO officials, including Defendants, and DOES 1-50, and/or each of them, knew and/or reasonably should have known that SFPD police officer trainees and/or SFPD police academy graduates are inadequately trained in the use of making lawful arrests, de-escalation techniques and the use of force.

68. Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants, and DOES 1-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the employment of inadequately trained police officer trainees and/or police academy graduates.

69. Plaintiff is informed and believes and thereon alleges that high ranking CITY AND COUNTY OF SAN FRANCISCO officials, including Defendants, and DOES 1-50, and/or each of them, knew and/or reasonably should have known that SFPD supervisory and training staff fails to adequately supervise SFPD officers and trainees.

70. Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants, and DOES 1-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the failure to adequately supervise SFPD officers and trainees.

71. The injuries and damages to Decedent and Plaintiff as alleged herein were the foreseeable

and proximate result of said inadequate training and/or inadequate supervision of Defendants and/or DOES 1-50 in his/her/their capacity as police officer(s) for the CITY AND COUNTY OF SAN FRANCISCO, and each of them.

72. Plaintiff is informed and believes and thereon alleges that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training and supervision of the Defendants and/or DOES 1-50 in his/her/their capacity as police officer(s) for the CITY AND COUNTY OF SAN FRANCISCO.

73. The aforementioned failure to train and/or supervise Defendants and/or DOES 1-50 in his/her/their capacity as police officer(s) for the CITY AND COUNTY OF SAN FRANCISCO, and each of them, resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to, violations of the Fourth and Fourteenth Amendment.

74. The aforementioned inadequate training and supervision of SFPD officers resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to, the following:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;
   b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;
   c. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

75. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Violation of California Civil Code Section 52.1)**
**(Plaintiff against Defendants Patino, Cha and DOES 1-25)**

76. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 75 of this Complaint.

77. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with Plaintiff's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code Section 52.1.

78. As a direct and proximate result of Defendants' violations of Civil Code Section 52.1,

Plaintiff suffered violations of his constitutional rights, and suffered damages as set forth herein.

79. Plaintiff is entitled to injunctive relief and an award of his reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

80. Plaintiff is entitled to treble damages, but in no case less than $4,000.00 and an award of reasonable attorney's fees pursuant to Civil Code Section 52(a).

81. Under the provisions of California Civil Code Section 52(b), Defendants are liable for punitive damages for each violation of Civil Code Section 52.1, reasonable attorney's fees and an additional $25,000.00

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### (Negligence)
### (Plaintiff against Defendants Patino, Cha, and DOES 1-25)

82. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 81 of this Complaint.

83. The present action is brought pursuant to Sections 820 and 815.2 of the California Government Code.  Pursuant to Section 820 of the California Government Code, as public employees, Defendants Patino, Cha and DOES 1-25 are liable for injuries caused by their acts or omissions to the same extent as a private person.  At all times mentioned herein, Defendants Patino, Cha and DOES 1-25 were acting within the course and scope of their employment and/or agency with Defendant City.  As such, Defendant City is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants Patino, Cha and DOES 1-25 pursuant to Section 815.2 of the California Government Code.

84. Defendants negligently and without due care violently assaulted Plaintiff without legal justification.  Plaintiff was injured as a proximate and direct cause of the Defendants' negligent conduct.

85. The violent and needless assaults on Plaintiff occurred as a result of the absence of due care for the safety of others and constituted an unreasonable, unwarranted, and excessive use of force and manifested an unreasonable risk of injury to Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(Title II of Americans with Disabilities Act - 42 U.S.C. Section 12132)**
**(Plaintiff against Defendants Patino, Cha, City and DOES 1-50)**

86. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 85 of this Complaint.

87. As against Defendants Patino, Cha and DOES 1-25, Plaintiff was a qualified individual under Title II of the Americans With Disabilities Act.  Plaintiff had a diagnosed mental illness and Defendant Officers had reason to know Plaintiff was suffering from his mental disability as, on arrival, it was obvious that Plaintiff was suffering from a mental disability.  Reasonable modifications to Defendants' tactical conduct would have eliminated any possible danger posed by Plaintiff and eliminated the Defendants' use of force against him. Plaintiff was thus a qualified individual under Title II of the Americans with Disabilities Act.

88. As against Defendant CITY, and/or DOES 26-50 in their capacity as official policymaker(s) for the CITY, Plaintiff alleges that said defendants failed to train, supervise, and/or discipline Defendants Patino, Cha and DOES 1-25, for failing to provide reasonable accommodations during their call for service to Plaintiff.

89. Further, reasonable accommodations were available and reasonable to use under the circumstances, including, but not limited to: de-escalation tactics; summoning the Crisis Intervention Team; creating time and space to reduce or eliminate any danger; among other reasonable options.

90. The City of San Francisco and its employees failed to provide any and all of these reasonable accommodations to Plaintiff, despite having reason to know of his disability and that these reasonable accommodations were available to them.  The Defendant officers intentionally and/or with deliberate indifference disregarded Plaintiff's disabilities and the necessary reasonable accommodations.  As a result, Plaintiff was denied the services and benefits of the ADA and suffered injury, harm and humiliation greater than other arrestees, Plaintiff was shot multiple times.

91. The aforementioned conduct of Defendants Patino, Cha and DOES 1-25, in failing to make reasonable accommodations for Plaintiff, denied Plaintiff the benefits of the CITY's programs and activities, and/or discriminated against Plaintiff by reason of his disability.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
**(Assault)**
**(Plaintiff Against Defendants Patino, Cha and DOES 1-25)**

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 92 of this Complaint.

93. Plaintiff was aware and placed in fear of imminent harm, contact and injury by Defendants when they intentionally pepper sprayed, hit with a baton and shot Plaintiff, without any just provocation or cause. Defendants' conduct was neither privileged nor justified under state statute or common law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**(Battery)**
**(Plaintiff Against Defendants Patino, Cha and DOES 1-25)**

94. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 93 of this Complaint.

95. Defendants intentionally pepper sprayed, hit with a baton and shot Plaintiff, without any just provocation or cause. Defendants' conduct was neither privileged nor justified under state statute or common law.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**JURY DEMAND**

96. Plaintiff hereby demands a jury trial in this action.

**PRAYER**

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum to be proven at trial;
2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3. For punitive damages against Defendants Cha and Patino in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and § 794 (a);
5. Any and all permissible statutory damages;
6. For cost of suit herein incurred; and

7. For such other and further relief as the Court deems just and proper.

January 26, 2018                    **Law Offices of John L. Burris**

                                          **/s/ John L. Burris**
                                        JOHN L. BURRIS
                                        ADANTE D. POINTER
                                        LATEEF H. GRAY
                                        Attorneys for Plaintiff

**The Law Offices of John L. Burris**
Airport Corporate Center
7677 Oakport Street, Suite 1120,
Oakland, CA 94621