**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
Email:  John.Burris@johnburrislaw.com

**ADANTE POINTER, ESQ., SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Wells Fargo Center
1901 Harrison St., Suite 1140,
Oakland, CA 94612
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEO MOORE, et al. <br><br> Plaintiffs, <br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | CASE NO.:  3:18-cv-00634-SI <br><br> **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION** <br><br> HON. SUSAN ILLSTON <br><br> Date:      Dec. 4, 2020 <br> Time:      10 a.m. <br> Ctrm:      1, 17th Fl (Zoom) |

**PLEASE TAKE NOTICE** that on December 4, 2020 at 10:00 a.m., or as soon as this matter may be heard in front of the Honorable Judge Susan Illston, in the United State District Court, Northern District, San Francisco Courthouse, Courtroom 1, Floor 17, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will move for partial summary adjudication against the Defendants to establish that officers were unlawfully on Plaintiff's porch and not in performance of their duties, and used excessive force as a matter of law pursuant to Federal Rules of Civil Procedure, Rule 56.

1
2

# **TABLE OF CONTENTS**

3    Table of Contents ....................................................................................................... ii

4    Table of Authorities .................................................................................................. iii

5    I. Introduction ......................................................................................................... 1

6    II. Procedural History ............................................................................................. 1

7    III. Statement of Facts ............................................................................................ 2

8        A. Patino's Interaction with Choy............................................................................. 2

9        B. Cha's Interaction with Moore without Patino........................................................ 3

10       C. Defendants Refused to Leave Moore's Property After Learning That

11   He Denied Any Allegations That He Violated the Restraining Order................................ 3

11       D. Defendants Re-Entered Moore's Stairs After Not Having Any

12   Further Legal Basis to Enter the Property and Learning They Were Not Welcome........................ 4

13       E. Defendants' Statements to Homicide.................................................................. 7

14       F. Body Camera Video of the Shooting.................................................................. 8

15       G. Defendants' Training…………............................................................................ 9

16   IV. Argument................................................................................................................ 10

17       A. Legal Standard........................................................................................................ 10

18       B. Defendants Were Not in Lawful Performance of Their Duties……………………..…….. 11
         C. Defendants Made an Unlawful Seizure As a Matter of Law……………….………..…….. 15

19           1. Unlawful Seizure Analysis. ……………………………………………….......... 15

20           2. The Government's Intrusion Was  Significant. …………………………………… 16

21           3. The Government's Interest  …………………………………………………..…. 17

22               a.   Immediacy of the Threat ………………………………………..……. 17

23               b.   Severity of the Crime………………………………………..…..…….. 18

24               c.   Actively Resisting or Evading Arrest……………………………..…….. 18

25           4.  Balancing the Factors ……………………………..………..……..……….. 18
         D. Defendant Cha Was Negligent……………………………………..……..…….. 20

27   V. Conclusion  ……..………………………………………………………….......... 21

28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

### TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)…..………………...………....……10

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)...…..…………………...……………..10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)………………..10

*Scott v. Harris,* 550 U.S. 372, 380 (2007)…...…………………………...……..……...……..11

*Florida v. Jardines*, 569 U.S. 1, 6 (2013) ...……………….. ………………….. ...……….….11

*Silverman v. United States*, 365 U.S. 505, 511 (1961). ..………………….. …..……..............11

*Oliver v. U.S.*, 466 U.S. 170, at 182, n. 12 (1984). ..……………...... ...……………….. ...…….11

*Payton v. New York*, (1980) 445 U.S. 573...………………... ……………….…...... …………..11

*Welsh v. Wisconsin* 466 U.S. 740, 741–742 (1984) ...…………….. …………………..... ...……11

*U.S. v. Struckman* (9th Cir. 2010) 603 F.3d 731...……………….. ...……………….…...……12

*United States v. Jerez* (7th Cir. 1997) 108 F.3d 684...……………….. ...…………………..…...13

*U.S. v. Cormier* (9th Cir. 2000) 220 F.3d 1103...………………….. ...…………….…... ...…………13

*City of Houston, Tex. v. Hill*, 482 U.S. 451, at 461 (1987) ...………………….. …..…14

*Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, at 1378 (9ᵗʰ Cir. 1990) ...……………….............14, 19

*Brendlin v. California,* 551 U.S. 249, at 254 (2007) ...……………….. …………………….........15

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985) ...……………….. ………………….…...... ..........15

*Graham v. Connor,* 490 U.S. 386, 397 (1989) ...……………….. ...……………….. …...……16

*Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). ...…………………...…………16, 18

*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) ...…………….......... ..…….16

*Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003) ...………………….. …………………..16

*Young v. County of Los Angeles*, 655 F.3d 1156, at 1161 (9th Cir. 2011) ...………………................16

*Smith v. City of Hemet*, 394 F.3d 689, 701–02 (9th Cir.2005) ...……………….. ...……………….....17

*United States v. Mohr*, 318 F.3d 613, 623 (4th dCir.2003) ...……………….. ...………………......17

*Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185 (9th Cir.2000) ...…………….17

*United States v. Neill*, 166 F.3d 943, 949–50 (9th Cir.1999) ...……………….. ...………………......17

*George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ...……………….. ………………….........17-18

*Bryan MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ...……………….. ...…………………..............17

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1033 (9th Cir. 2018) ...………………......... ..…….17

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir.2001) ...……………….......18

*Young v. Cnty. of L.A.*, 655 F.3d 1156, 1165–66 (9th Cir.2011) ..………………... ..………………18

*Deorle v. Rutherford,* 272 F.3d 1272, 1282-83 (2001) ..……………... ..……………….................18

*Cavanaugh v. Wood Cross City*, 625 F.3d 661, 665-66 (10th Cir. 2010) ..………………... ..……….19

*Azevedo v. City of Fresno,* 2011 U.S. Dist. LEXIS 10132, 31-31 (E.D. Cal. 2011) ..……………….19

*Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622, 628-29 (2013) ..………………... ..……………….....20

*Young Han v. City of Folsom*, 695 F. App'x 197, 198-99 (9th Cir. 2017) ..………………... ..……...20

*Grudt v. City of Los Angeles*, 86 Cal. Rptr. 465, 468 (1970) ..………………... ..……………….....20

**State Cases**

*People v. Moore*, 2018 WL 2016792 at *1 (1st Dist. 2018)… ………………………………………….1

*People v. Lujano* (2014) 229 Cal.App.4th 175..………………... ..………………... ..……………..12

*People v. Rivera* (2007) 41 Cal.4th 304..………………... ..………………... ..……………... ....12

*People v. Welsch* (1984) 151 Cal.App.3d 1038..………………... ..………………... ..…………….13

*Cassinos v. Union Oil Co*. 14 Cal. App. 4th 1770, 1780 (1993) ..………………... ..……………….14

*In re Chase C.* (2015) 243 Cal.App.4th 107..………………... ..………………... ..……………..14

# I.  **INTRODUCTION**

Defendants San Francisco Officers Patino and Cha trespassed on Decedent Moore's property, cussed, laughed and provoked him, despite Moore's obvious symptoms of schizophrenia. ███████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

Sadly, Decedent Moore would die three years later of complications from the gunshot wounds. Plaintiffs bring this motion on behalf of their son. As a California State Court of Appeals has court already affirmed, Defendants were not lawfully in performance of their duties at the time at the time of their encounter with Decedent Moore. Furthermore, the Defendants were harassing Decedent Moore and unlawfully seized him as a matter of law.

# II. **PROCEDURAL HISTORY**

On January 6, 2017, Defendant San Francisco Police Department Officers Colin Patino and Kenneth Cha responded to a call that Decedent Sean Moore was banging on a wall he shares with his neighbor in violation of a temporary restraining order. During the encounter, Defendant Cha shot Decedent Moore in the stomach on his front porch.

Decedent Moore was charged with several misdemeanor and felony counts for battery and resisting arrest a police officer.  *People v. Moore*, 2018 WL 2016792 at *1 (1st Dist. 2018) attached as **Exhibit 1** to the Declaration of Patrick Buelna [Buelna Decl.]. After the preliminary hearing, Moore moved to dismiss the charges for insufficient evidence under Cal. Pen. Code § 995. (Id.) The superior court determined there was insufficient evidence that the officers were lawfully performing

their duties when Moore committed the alleged crimes and set aside eight counts. (Id.) The district attorney appealed, but the appellate court affirmed dismissal holding that the Defendants were not in lawful performance of their duties. (Id.)

After the charges were dismissed, Decedent Moore filed his complaint for unlawful seizure and excessive force under the Fourth Amendment (COA 1-2), retaliatory arrest for speech under the First Amendment (COA 3), a *Monell* claim (COA 4), a Bane Act claim for the related civil rights violations in COA 1-3 (COA 5), negligence (COA 6), Title II ADA claim (COA 7), assault and battery (COA 8-9). (Doc. 1).

On January 20, 2020, Decedent Moore died in custody at San Quentin State Prison from complication related to the gunshot wounds he suffered from Defendants' on January 16, 2020. (Doc. 66). Decedent's successors-in-interest, Plaintiffs Cleo and Loyce Moore, substituted into the lawsuit to bring the aforementioned survival claims on his behalf. (Doc. 71).

### III.    STATEMENT OF FACTS

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

3

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

████████████████████████████████████

████████

### G.  **Defendants' Training**

Defendants, as all San Francisco Police Officers, were trained that they are not permitted to arrest a person for a misdemeanor committed outside of their presence unless they have some other information. (PMK for TRO, at pp. 8; 15). One such exception is that a citizen lets the officers know they want to make a citizen's arrest but they have to obtain that request from the citizen *first*. (Id. at 16-17). Furthermore, even saying simply "I saw the person commit a misdemeanor" is not sufficient evidence to make a citizen arrest, even this statement needs more information. (Id. at 19).

Defendants were also trained on when and how to arrest a person for violation of a temporary restraining order provided that the victim of the restraining order requests an arrest. (Id. at 24-25). If an officer witnesses the violation they may make an arrest; otherwise, they must conduct an investigation. (Id. at 26). Defendants are also trained that they may only detain someone if they have reasonable suspicion they committed a crime, but once that suspicion dissipates they must let the person leave or continued detention is unlawful. (Id. at 27-28). Defendants were trained in order to make an arrest, they need more than reasonable suspicion – they need probable cause. (Id. at 28-29).

In regards to a restraining order if the victims says the suspect violated its terms and the officers learn from the suspect that he denies violating it, they must return to the victim to see what they want the officers to do. (Id. at 33). Furthermore, Defendants were trained that when there are conflicting stories, they may not enter the house of the suspect and arrest them because the underlying violation is a misdemeanor not committed in their presence. (Id. at 36).

### IV.  **ARGUMENT**

### A.  **LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment...." *Anderson*, 477 U.S. at 255.

If the non-moving party's version of the facts is ***contradicted by the record to the point that a reasonable jury would not believe it***, the court ***should not adopt the nonmoving party's narrative*** in

ruling on a motion for summary judgment. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (emphasis added).

**B.  DEFENDANTS WERE NOT IN LAWFUL PERFORMANCE OF THEIR DUTIES**

"[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) citing *Silverman v. United States*, 365 U.S. 505, 511 (1961).

"This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window. We therefore regard the area 'immediately surrounding and associated with the home'— what our cases call the curtilage—as 'part of the home itself for Fourth Amendment purposes.'" *Id.*

While the boundaries of the curtilage are generally "clearly marked," the "conception defining the curtilage" is at any rate familiar enough that it is "easily understood from our daily experience." *Oliver v. U.S.*, 466 U.S. 170, at 182, n. 12 (1984). "The front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." *Florida*, 569 U.S. at 6.

Ordinarily, government officials may not physically intrude into a home or its curtilage for a search or seizure without the resident's consent unless they have a warrant or exigent circumstances permit warrantless entry. *Payton v. New York*, 445 U.S. 573, 590 (1980); *Welsh v. Wisconsin* 466 U.S. 740, 741–742 (1984). The warrant exception for investigative detentions " 'does not apply to in-home searches and seizures,' " and "to fall within the exigent circumstances exception to the warrant requirement, an arrest or detention within a home...must be supported by both probable cause and the existence of exigent circumstances." *People v. Lujano,* 229 Cal.App.4th 175, 182–183 (2014). While

the " 'exigency' exception" derives from the investigatory function, it allows warrantless entry into a home only if police "have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is 'necessary to prevent...the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' " *U.S. v. Struckman,* 603 F.3d 731, 738 (9th Cir. 2010) (italics added).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' " (*Florida,* supra, 569 U.S. at 8) " '[T]he knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.' [Citation.] This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer ) leave." *Ibid.*; see *People v. Rivera,* 41 Cal.4th 304, 308 (2007) ["[e]ven if acting on an anonymous, uncorroborated tip, police may knock on the door of a residence, speak with the occupant, and request permission to enter and search"].)

Once the invitation has been repudiated, the officer must leave absent exigent circumstances or a warrant. A factually analogous case from the federal Seventh Circuit aptly illustrates the point. In *United States v. Jerez* 108 F.3d 684 (7th Cir. 1997) (*Jerez*), officers approached a motel room at about 11:00 p.m. to speak with the occupants despite lacking probable cause or reasonable suspicion they were involved in criminal activity. (*Id*. at pp. 686–687, 693; see *U.S. v. Cormier,* 220 F.3d 1103, 1108–1109 (9th Cir. 2000) [Fourth Amendment protections apply to motel room occupants like residents in their homes].) Officers knocked on the motel room door for several minutes and said,

"Police. Open up the door. We'd like to talk to you." When they received no response, one officer knocked on the motel room's window while another kept knocking on the door. After about two minutes, the officer knocking on the window saw movement in the room and shone a light into the room. An occupant pulled open the drapes and let them in the room after an officer showed his law enforcement insignia and said, "Sheriff's Department. Can we talk to you? Would you open the door?" *Jerez*, at p. 687. The court held the encounter was not consensual. *Id.* at pp. 690–692. "The deputies' persistence, in the face of the refusal to admit, transformed what began as an attempt to engage in a consensual encounter into an investigatory stop. ... [¶] ... [¶] Simply stated, this is a case in which the law enforcement officers refused to take 'no' for an answer" and " 'convey[ed] a message that compliance with their requests [was] required.' " *Id.* at p. 692.

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

(See Pen. Code § 836 [warrantless arrest permissible when officer "has probable cause to believe that the person to be arrested has committed a public offense in his presence"; *People v. Welsch* (1984) 151 Cal.App.3d 1038, 1042 ["[i]f the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed in his presence"]).

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

██████████  *See Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1780 (1993).

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████ *See In re Chase C.* (2015) 243

Cal.App.4th 107, 115 [" '[s]peech is generally protected by the First Amendment, even if it is

intended to interfere with the performance of an officer's duty, provided no physical interference

results'"]. "[T]he First Amendment protects a significant amount of verbal criticism and challenge

directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, at 461 (1987). The freedom of

individuals to oppose or challenge police action verbally without thereby risking arrest is one

important characteristic by which we distinguish ourselves from a police state. *Id*. at 462–63. "Thus,

while police, no less than anyone else, may resent having obscene words and gestures directed at

them, they may not exercise the awesome power at their disposal to punish individuals for conduct

that is not merely lawful, but protected by the First Amendment." *Duran v. City of Douglas, Ariz.*,

904 F.2d 1372, 1378 (9th Cir. 1990), citing *Hill*, supra, 482 U.S. 451.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13      █A person is seized by the police and thus entitled to challenge the government's action under

14   the Fourth Amendment when the officer by means of physical force or show of authority terminates

15   or restrains his freedom of movement through means intentionally applied." *Brendlin v. California,*

16   551 U.S. 249, 254 (2007) (internal quotation marks and citations omitted).

17

18          To determine the constitutionality of a seizure, courts must "balance the nature and quality of the

19   intrusion on the individual's Fourth Amendment interests against the importance of the government

20   interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985). In evaluating Fourth

21   Amendment claims, courts ask "whether the officers' actions are 'objectively reasonable' in light of

22   the facts and circumstances confronting them."  *Graham v. Connor,* 490 U.S. 386, 397 (1989).  The

23   Ninth Circuit applies a three-step process to determine reasonableness in use-of-force cases.  *Glenn v.*

24   *Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011).

25

26

27

28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (quoting *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)).

Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Glenn, supra*, 673 F.3d at 871 (citing *Graham*, 490 U.S. at 396).

Third, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

## 2. The Government's Intrusion Was Significant

Pepper spray is a form of force capable of inflicting significant pain and causing serious injury; as such, it is considered "intermediate force" that, while less severe than deadly force, nonetheless presents a significant intrusion upon an individual's liberty interests. *See Young v. County of Los Angeles*, 655 F.3d 1156, at 1161 (9th Cir. 2011) quoting *Smith v. City of Hemet*, 394 F.3d 689, 701–02 (9th Cir. 2005); *United States v. Mohr*, 318 F.3d 613, 623 (4th Cir. 2003).

Pepper spray "is designed to cause intense pain," and inflicts "a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx," as well as "disorientation, anxiety, and panic." *Young v. County of Los Angeles*, 655 F.3d 1156, at 1162 (9th Cir. 2011) quoting *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199–1200 (9th Cir. 2000), vacated and remanded on other grounds, 534 U.S. 801 (2001); see also *United States v. Neill*, 166 F.3d 943, 949–50 (9th Cir. 1999) (affirming district court finding that pepper spray is a "dangerous weapon" under the U.S. Sentencing Guidelines and describing trial evidence that pepper spray causes "extreme pain" and is "capable of

causing 'protracted impairment of a function of a bodily organ' " as well as lifelong health problems such as asthma).

As such, Defendant's use of pepper spray was an intermediate use of force and a significant intrusion on Moore's civil rights.

### 3. The Government Interest for the Intrusion Under the Totality of the Circumstances

Next, the court must consider the government's interest for the intrusion under the totality of the circumstances. In *Graham*, the Supreme Court noted courts should consider such factors as (a) whether the suspect posed an immediate threat to the safety of the officer or others; (a) the severity of the crime at issue; and (c) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

#### a. Immediacy of the threat

The Ninth Circuit has repeatedly stated that "the most important of these factors is whether the suspect posed an immediate threat to the safety of the officer or others." *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013) quoting *Bryan MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotations omitted).



*See Vos v. City of Newport Beach*, 892 F.3d 1024, 1033 (9th Cir. 2018) (finding the suspect not to be a threat when he was surrounded by eight officers some armed with less lethal options, and had the door surrounded and had established defensive cover using police vehicles)

#### b. Severity of the Crime

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

[REDACTED]

[REDACTED]

[REDACTED]

### c.  Actively Resisting or Evading Arrest

Video evidence demonstrated that Defendants were provoking Moore, making fun of him and cussing at him. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir.2001) (an officer's "provocative conduct" can trigger an individual's "limited right to offer reasonable resistance"). [REDACTED]

[REDACTED]

[REDACTED] . See, e.g., *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1165–66 (9th Cir.2011) (arrestee's repeated refusal to reenter vehicle at officer's command is not active resistance); *Bryan v. MacPherson*, 630 F.3d 805, 829–30 (9th Cir. 2010) (arrestee's cursing and muttering to himself and exiting his vehicle despite being told to stay in car was not active resistance).

### 4.  Balancing the Factors

Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion."  *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

In addition to the *Graham* factors, the Ninth Circuit considers the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the person they used force against was emotionally disturbed, as additional factors in its analysis.  *See, e.g. Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (2001); *Cavanaugh v. Wood Cross City*, 625 F.3d 661, 665-66 (10th Cir. 2010) (holding the *Graham* factors

did not justify an officer tasering an unarmed woman in the back as she attempted to briskly walk into her house); *Azevedo v. City of Fresno,* 2011 U.S. Dist. LEXIS 10132, 31-31 (E.D. Cal. 2011) (where an officer tasering a man suspected of misdemeanors as he ran full speed on the street could constitute unconstitutional excessive force).

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████

  Indeed, the Ninth Circuit in *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990) upheld a district court's grant of summary judgment in favor of plaintiffs as to liability of an officer for making an unlawful arrest. In *Duran*, officers were dispatched to a hotel bar for an unruly patron. *Duran*, 904 F. 2d, at 1374. At the bar, plaintiff Duran and the officer Aguilar exchanged heated words, but Duran left the bar. *Id*. Duran's wife drove him home and on their way Duran made an obscene gesture as they passed Aguilar, who noticed it. *Id*. Officer Aguilar followed him home into a mobile home park. *Id*.

  Aguilar initiated a traffic stop and ordered Duran to step away from the car. *Id*. Duran told the officer he did not have to and began using profanities. *Id*. at 1374-1375. In response, Officer Aguilar decided to arrest Duran for disorderly conduct and a scuffle ensued causing Duran a dislocated elbow. *Id*. at 1375. The district court granted Plaintiff's motion for partial summary adjudication for an unlawful seizure on the liability issue. *Id*. The Ninth Circuit noted that as "[i]narticulate and crude

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

as **Duran's** conduct may have been, it represented an expression of disapproval toward a police officer with whom" it was not an arrestable offense and the Court affirmed the unlawful seizure. (Id. at 1378).

Similarly here, Moore's profanities were relentless and rude, but the Defendant Officers were trespassing and their videos demonstrate that Moore did nothing criminal during the interaction to justify arrest or force when Defendant Cha used pepper spray.

### D. DEFENDANT CHA WAS NEGLIGENT

Similar to the Fourth Amendment analysis: "[P]ublic employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions." *Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622, 628-29 (2013). Thus, to support a negligence finding, a plaintiff must show that the defendant public employee had a duty to exercise due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Id.* The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force." *Id.* at 629. And "[t]he reasonableness of an officer's conduct is determined in light of the totality of the circumstances." *Id.* "In police cases, as well as others, the conduct in question 'must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care such doubt must be resolved as a matter of fact rather than of law." *Young Han v. City of Folsom*, 695 F. App'x 197, 198-99 (9th Cir. 2017) (quoting *Grudt v. City of Los Angeles*, 86 Cal.Rptr. 465, 468 (1970)).

As discussed, Defendant Cha used unreasonable force as a matter of law in seizing Plaintiff and Defendant can only be held liable as a matter of law for his conduct.

## V.     <u>CONCLUSION</u>

Plaintiffs respectfully request this Court GRANT Plaintiff's motion for partial summary adjudication as to the legal issues that Defendants were not in performance of their duties when they re-entered the stairway and used excessive force (and were negligent) as a matter of law when they utilized the pepper spray.

Date: October 30, 2020                    Respectfully submitted,


**POINTER & BUELNA, LLP**

**LAWYERS FOR THE PEOPLE**


/s/ Patrick Buelna
PATRICK M. BUELNA
COUNSEL FOR PLAINTIFFS