# EXHIBIT 3

**DEPOSITION OF PMK ANTONIO FLORES**

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

SEAN MOORE, an individual,

       Plaintiff,

vs.

CITY AND COUNTY OF SAN FRANCISCO, et al.

       Defendants.

CASE NO.: 3:18-CV-00634-SI

CERTIFIED COPY

DEPOSITION OF PMK ANTONIO FLORES

FRIDAY, OCTOBER 4, 2019

REPORTED BY: KELLY L. MCKISSACK, CSR #13430

1

DEPOSITION OF PMK ANTONIO FLORES

1  A. Yes, I've reviewed it, and I understand it.
2  Thank you.
3  Q. Do you recognize it?
4  A. Yes.
5  Q. Appears to be actually identical to the --
6  some of the pieces of paper that you brought here today,
7  right?
8  A. That's correct.
9  Q. Do you understand that you're here as the
10 person most knowledgeable for your department in regards
11 to policies, informational bulletins and trainings that
12 defendants were trained on and in use at the time of the
13 incident relating to enforcing and/or serving
14 restraining orders?
15 A. Correct. Yes.
16 Q. Thank you. It appears you brought a stack of
17 papers with you today. Do you mind if I take a look at
18 those?
19 A. Sure.
20      MS. BAUMGARTNER: Two of these pieces of paper
21 are attorney-client privileged communications between
22 the deponent and myself. So I'm going to withdraw those
23 from the pack.
24      THE WITNESS: This is a PowerPoint.
25      MS. BAUMGARTNER: Which I produced to you.

8

1  A. That is those situations where, for example,
2  in this LD --
3  Q. By "LD," you mean learning domain?
4  A. Yes. We're talking about domestic violence.
5  So say that individual conveys to us, as the officers
6  being the first responding, that they were involved in a
7  domestic violence incident where there was violence that
8  occurred. And this did not occur in their presence. So
9  at that moment they can take action and arrest that
10 individual for that felony.
11 Q. Now, sort of by inference, I have an
12 understanding that officers are trained that they're not
13 permitted to arrest a person for a misdemeanor committed
14 outside their presence unless they have some other
15 information, right?
16 A. That is correct.
17 Q. Now, officers are also trained, I'm going to
18 go down to the third subcategory, "Persons arrested
19 under a private person's (citizen's) arrest (PC837.)"
20 Is that referring in part to the policy that we were
21 just discussing under Exhibit 2?
22 A. You're talking about the General Order,
23 Department General Order 5.04?
24 Q. Correct.
25 A. Correct. Yes.

15

1  Q. Is it fair to say that under types of arrest
2  one of the arrests they may make is a -- is one that's
3  directed by a citizen?
4  A. Correct.
5  Q. Now, I had left kind of open-ended that they
6  can commit -- or they can arrest -- strike that.
7  An officer may not arrest a person for a
8  felony committed outside of his presence unless he has
9  some other information, right? I just said that.
10  A. Yes.
11  Q. And you agree with that?
12  MS. BAUMGARTNER: Objection. That
13  mischaracterizes the question. You were talking about
14  misdemeanors. And you just used the word felony.
15  MR. BUELNA: I don't believe so, but if so, I
16  can restate it.
17  MS. BAUMGARTNER: Okay.
18  BY MR. BUELNA: Q. I mentioned before, and hopefully I
19  make clear now, you'd agree that officers are trained
20  that they're not permitted to arrest someone for a
21  misdemeanor committed outside of their presence unless
22  they have some other information, right?
23  A. Correct.
24  Q. ==All right. And one of those exceptions is if==
25  ==a person or a citizen provides them that information and==

16

**DEPOSITION OF PMK ANTONIO FLORES**

```
 1   directs the officer to conduct a citizen's arrest,
 2   right?
 3        A.   Correct.
 4        Q.   And officers are trained that in order to
 5   apply that exception of a citizen's arrest, that citizen
 6   actually must direct them to make that arrest, right?
 7             MS. BAUMGARTNER:  Objection.  Vague.
 8             THE WITNESS:  Vague.
 9   BY MR. BUELNA:  Q.  Go ahead.
10        A.   That's -- they can take into -- it doesn't
11   have to be a direct, say, I want that individual
12   arrested.  Sometimes they have to dig a little bit more
13   before those words are said.  So they may not come
14   directly and say, hey, I want them placed under arrest.
15             The information that they obtain at that time
16   could possibly then lead them toward that direction.
17   And then clarification of, well, what would you want us
18   to do.
19        Q.   And that's what I guess I was going to be my
20   next question.  They may clarify in a way saying would
21   you -- what would you like us to do or would you like us
22   to arrest them, and then the person affirms that.  And
23   then they go ahead and do it, right?
24        A.   That's possible.  Yes.
25        Q.   However, if they were simply to learn some
```

17

1  information about the situation and not take that
2  additional step of saying, hey, would you -- what would
3  you like us to do, or do you want us to arrest them,
4  then they're not permitted to make that arrest based on
5  the citizen's simple -- simple silence, right?
6          MS. BAUMGARTNER:  Objection.  Incomplete
7  hypothetical.  Vague.
8          THE WITNESS:  That was a lot.  I'm sorry.
9  BY MR. BUELNA:  Q.  And I can re-ask it.
10     A.  Yes.  If you could, please.
11     Q.  Sure.  So we -- I think we went through one
12  exception to the misdemeanor committed outside of an
13  officer's presence, is if a citizen directs the officer
14  or affirms to the officer that they want the person
15  arrested, right?
16     A.  Yes.  Correct.
17     Q.  However, they do need to affirm or request in
18  some form that the person be arrested, right?
19          MS. BAUMGARTNER:  Objection.  Incomplete
20  hypothetical.  Vague.
21          THE WITNESS:  They should get some kind of
22  information.
23  BY MR. BUELNA:  Q.  That positively affirms that they
24  want the person arrested, right?
25          MS. BAUMGARTNER:  Objection.  Vague.

18

**DEPOSITION OF PMK ANTONIO FLORES**

```
1    Incomplete hypothetical.
2              THE WITNESS:  They could ask that -- that
3    question.
4    BY MR. BUELNA:  Q.  For example -- I'm not sure that's
5    responsive.
6              If I were to walk up to an officer and I say,
7    I saw that guy commit some sort of misdemeanor, and then
8    walk away, that's not enough to -- for the officer to
9    understand that I want a citizen's arrest, right?
10             MS. BAUMGARTNER:  Objection.  Incomplete
11   hypothetical.
12             THE WITNESS:  Correct.
13   BY MR. BUELNA:  Q.  Has to be something to the effect
14   of, Officer, I saw this man or woman commit a
15   misdemeanor, and I'd like them arrested, right?
16             MS. BAUMGARTNER:  Objection.  Incomplete
17   hypothetical.
18             THE WITNESS:  They would probably need more
19   information.
20   BY MR. BUELNA:  Q.  Fair enough.  But if they had enough
21   information that -- let me ask you this.
22             The information that they need for a citizen's
23   arrest, does it have to amount to reasonable suspicion
24   or probable cause?
25             MS. BAUMGARTNER:  Objection.  Vague.  But go
```

                                                              19

1  apply to them, right?
2     A.  Correct.
3     Q.  Now, most importantly we're going to talk
4  about here today is a temporary restraining order,
5  sometimes referred to as a TRO.  Do you understand that?
6     A.  Yes.
7     Q.  Okay.  Now, for a temporary restraining order,
8  are officers trained on how to evaluate whether or not a
9  person has violated a temporary restraining order?
10    A.  Yes.
11    Q.  And are they trained on how to enforce, and by
12  enforce I mean determine if someone's violated it and
13  then take the necessary actions in order to enforce it?
14    A.  Yes.
15    Q.  Okay.  And part of enforcing it is arresting
16  the person, right?
17           MS. BAUMGARTNER:  Objection.  Incomplete
18  hypothetical.
19           THE WITNESS:  Yes.
20  BY MR. BUELNA:  Q.  If they -- obviously, if they
21  determine it was violated, right?
22    A.  Correct.
23    Q.  Okay.  Now, an officer, if they -- when
24  they're enforcing a temporary restraining order, for
25  example, one to stay away from another person, they have

24

**DEPOSITION OF PMK ANTONIO FLORES**

1  to collect information in order to determine if that was
2  violated, right?
3      A.   Could you repeat, please.
4      Q.   Sure.  If an officer is to determine if a
5  temporary restraining order was violated, they have to
6  collect information before they do so, right?
7      A.   Correct.
8      Q.   And typically they will collect that from a
9  witness or a victim, right?
10     A.   Correct.
11     Q.   Let's say, for example, however, if the
12 violation occurs in their presence, then they can arrest
13 without collecting more information, right?
14     A.   If during their initial investigation and they
15 determine there is a violation of the restraining order,
16 then, yes.
17     Q.   Well, let's, for example, let's say the
18 officer has the temporary restraining order.  They
19 determine it's a valid one.  And then while they're
20 there on scene they see it violated.  They can then
21 arrest the person for the violation, right?
22     A.   Well, it depends on what the officer's
23 reading, what's in front of them.  Because if it's a
24 temporary restraining order, these are not one pages.
25 They're several pages.  So they have to go into reading

25

1  all of the temporary restraining order because there's
2  certain different conditions on those orders.  And so
3  because of that, it's -- it's not -- I see something in
4  the face of this order that says there may be more
5  information and you have to digest that information.
6      Q.  So officers are trained to read the entire
7  one, digest the information and then determine?
8      A.  They try, yes.
9      Q.  Okay.  Now, I guess my question is almost a
10 softball question.  Let's say the officer reads it,
11 digests all the information.  One of them is that the
12 person against whom the restraining order is effected
13 against, they violated it right in front of them.
14 They're permitted then to arrest them for violation of
15 the temporary restraining order, right?
16     A.  Well, this is, again, if we're talking about a
17 restraining order that has nothing to do with domestic
18 violence, then they're going to ask that individual what
19 it is that you want us to do, the enforcement of that
20 order.
21     Q.  And by the individual, you mean the person who
22 sought the restraining order, right?
23     A.  Correct.
24     Q.  Okay.  And then if that person indicates that
25 they want them arrested, then they'll go ahead and

26

1    arrest them if a violation has been determined to have
2    taken place?
3         A.   Correct.
4         Q.   Okay.  But before that they're not going to do
5    anything, right?
6              MS. BAUMGARTNER:  Objection.  Incomplete
7    hypothetical.
8              THE WITNESS:  No.  They're going to determine
9    what they need to do.
10   BY MR. BUELNA:  Q.  Okay.  Now, officers are trained
11   that in order to question or collect information from a
12   person, even if it is in regards to restraining order,
13   they need at least reasonable suspicion, right?
14             MS. BAUMGARTNER:  Objection.
15   BY MR. BUELNA:  Q.  If they're going to detain a person.
16             MS. BAUMGARTNER:  Wait.  So that's a compound
17   question.
18   BY MR. BUELNA:  Q.  Sure.  Let me -- let me take it
19   back.
20             Officers are trained that in order to detain
21   anyone they always need reasonable suspicion to
22   substantiate the detention, right?
23        A.   Correct.
24        Q.   And once reasonable suspicion dissipates or is
25   no longer there, then they have to let the person go,

27

1    right?
2         A.   Correct.
3         Q.   And they're trained that if they continue to
4    detain the person even after reasonable suspicion has
5    dissipated, that their actions become unlawful, right?
6         A.   Correct.
7         Q.   And if they were then to effect arrest, even
8    though they had no reasonable suspicion, much less
9    probable cause, you understand that those actions would
10   be unlawful as well, right?
11        A.   Correct.
12        Q.   I'm going to take a quick break to make a copy
13   of this.  And then I have a couple more questions.  Then
14   we'll be done.
15             (Break was taken.)
16             MR. BUELNA:  I'm going to mark this as
17   Exhibit, I believe, 4.
18             (Whereupon, Plaintiff's Exhibit 4 was marked
19             for identification.)
20   BY MR. BUELNA:  Q.   And this was produced to Plaintiff
21   is CCSF-Moore 179 to 187.  And if you could just look
22   through it.
23             MS. BAUMGARTNER:  Do you want to direct him to
24   something in particular, or do you want him to take the
25   time to read all eight pages or ten pages, whatever it

28

1   BY MR. BUELNA:  Q.  Sure.
2        A.  So one party is saying the person that sought
3   the restraining order says they violated and the other
4   person is saying that they didn't violate the order.
5        Q.  Correct.
6        A.  So then it comes back to determination about
7   what that person wants done.
8        Q.  So then they would ask the person who sought
9   the order what they would like done, right?
10            MS. BAUMGARTNER:  Objection.  Incomplete
11  hypothetical.
12            THE WITNESS:  Yes.
13  BY MR. BUELNA:  Q.  And only at that point could they
14  take an action as far as arresting the person, right?
15            MS. BAUMGARTNER:  Objection.  Incomplete
16  hypothetical.
17            THE WITNESS:  No.
18  BY MR. BUELNA:  Q.  Correct me where I'm wrong.
19       A.  So they would probably gather more information
20  regarding this situation.
21       Q.  I guess I should have asked it different.
22  They're not permitted at that point, though, to arrest
23  the person without more information then?
24            MS. BAUMGARTNER:  Objection.  Incomplete
25  hypothetical.

33

**DEPOSITION OF PMK ANTONIO FLORES**

```
 1        A.   Got it.
 2        Q.   Now, now the next step is that both these
 3   people, the person who sought it and the person
 4   against -- against whom it was sought are both in their
 5   houses.  Got it?
 6        A.   They're both inside the houses?
 7        Q.   Yes.
 8        A.   Okay.
 9        Q.   And they have conflicting accounts.  You
10   understand?
11        A.   Correct.
12        Q.   Are the officers permitted to go inside the
13   house of the person against whom it was sought and
14   arrest the person?
15             MS. BAUMGARTNER:  Objection.  Incomplete
16   hypothetical.
17             THE WITNESS:  No.
18   BY MR. BUELNA:  Q.  Why not?
19        A.   It's a misdemeanor that's not committed in
20   their presence.
21             MR. BUELNA:  I think that's it.
22             MS. BAUMGARTNER:  Okay.
23             THE COURT REPORTER:  Would you like a
24   transcript?
25             MS. BAUMGARTNER:  Yes, please.
```

36

**DEPOSITION OF PMK ANTONIO FLORES**

```
STATE OF CALIFORNIA         )
                            ) ss.
COUNTY OF ALAMEDA           )
```

      I hereby certify that the witness, Antonio Flores, in the foregoing deposition appeared before me, Kelly McKissack, a Certified Shorthand Reporter and a disinterested person.

      Said witness was then and there at the time and place previously stated by me placed under oath to tell the truth, the whole truth and nothing but the truth in the testimony given on the date of the within deposition; that the deposition is a true record of the witness' testimony as reported by me.

      The testimony of the witness and all questions and remarks requested by Counsel was reported under my direction and control, caused to be transcribed into typewritten form by means of Computer-Aided Transcription.

      I am a Certified Shorthand Reporter licensed by the State of California, and I further certify that I am not interested in the outcome of the said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.  I am not of counsel or attorney for either or any of the parties to the case named in the within caption.

      IN WITNESS WHEREOF, I have hereunto affixed my signature this 18th day of October, 2019.


__/s/Kelly McKissack_____

Kelly McKissack
Certified Shorthand Reporter
California License No. 13430

                --o0o--

38

```
 1                         WITNESS LETTER

 2        TO:  Antonio Flores                      Date: 11.05.19
               c/o Margaret W. Baumgartner, Deputy City Attorney
 3             OFFICE OF THE CITY ATTORNEY         Depo: 10.04.19
               1390 Market Street, 6th Floor
 4             San Francisco, CA  94102            Ref. #19100465

 5        RE: Sean Moore v. City & County of San Francisco, et al.

 6        Dear Mr. Flores:

 7             Please be advised that the transcript of your
          deposition taken in the above matter has been completed
 8        and is now available at this office for your reading and
          signing.
 9             Please contact our office between the hours of 9:30
          a.m. and 5:00 p.m. Monday-Friday, to schedule an
10        appointment.  Or, if you prefer, contact the attorney to
          review and sign the copy of your deposition under
11        penalty of perjury.
               Read the transcript making any changes necessary.
12        In making any changes, please use the following guide:
               1. DO NOT WRITE on the original transcript.
13             2. SIGN UNDER PENALTY OF PERJURY at the end of the
                  Deposition on the Certificate of Witness Page.
14             3. List each change on the Deposition Errata Sheet
                  following this page. Signature is required at
15                the bottom of the Errata Sheet.
               4. Forward the signed Certificate of Witness Page
16                and signed Errata Sheet in addition to a copy of
                  this letter to:
17                     Barbara J. Butler & Associates
                       Certified Court Reporters
18                     P.O. Box 3508, Santa Clara, CA  95055
                       (510) 832-8853 or (408) 248-2885.
19             Upon receipt of items requested in this letter, I
          will forward copies of same to all Counsel.
20             In the event you have not reviewed you deposition
          within 30 days or by trial date, whichever is sooner,
21        the original transcript will be sealed pursuant to
          applicable laws and thereafter mailed to the deposing
22        attorney.
                                  Sincerely,
23
                                  /s/Barbara J. Butler
24                                Barbara J. Butler, CSR

25        cc:  All Counsel
```

41