DENNIS J. HERRERA, State Bar #139669
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
CHRISTOPHER B. WHITMAN, State Bar #223636
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-4240
Facsimile:     (415) 554-3837
Email:         chris.whitman@sfcityatty.org
Email:         kelly.collins@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
KENNETH CHA and COLIN PATINO

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MOORE, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; KENNETH CHA, individually and in his capacity as a City of San Francisco Police Officer; COLIN PATINO, individually and in his capacity as a City of San Francisco Police Officer; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 3:18-cv-00634-SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, OFFICER KENNETH CHA, AND OFFICER COLIN PATINO IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  December 4, 2020<br>Time:          10:00 a.m.<br>Place:         Courtroom One, 17th Floor<br>               450 Golden Gate Ave.<br>               San Francisco, CA 94102<br><br>Trial Date:    February 8, 2021 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

LEGAL STANDARDS ........................................................................................................3

ARGUMENT .......................................................................................................................4

I.    Plaintiffs' Motion Should Be Denied Because It Is Not Properly Before
      the Court..................................................................................................................4

      A.    Plaintiffs Did Not Provide the Documentation Needed to Bring
            Any Claims for Relief as the Decedent's Purported Successors-in-
            Interest.........................................................................................................4

      B.    Plaintiffs Failed to Join a Necessary Party. .................................................5

      C.    The Operative Complaint Does Not Identify Which Claims and
            Theories of Liability Are Alleged by Plaintiffs Cleo and Loyce
            Moore. ..........................................................................................................6

      D.    Plaintiff Loyce Moore Cannot Pursue Any Claims Against
            Defendants. ..................................................................................................7

II.   Plaintiffs' Motion for Partial Summary Judgment Should Be Denied
      Because They Failed to Carry Their Initial Burden.................................................8

      A.    Plaintiffs Do Not Allege Unlawful Entry, and Regardless, the
            Undisputed Facts Show Probable Cause for Arresting Mr. Moore. ...........8

            1.    There Was No Reasonable Expectation of Privacy on the
                  Open Stairwell Between the Public Sidewalk and the Metal
                  Security Gate Outside the Front Door. ...........................................9

            2.    The Officers Had Reasonable Suspicion to Detain Mr.
                  Moore and Probable Cause to Arrest Him Before Any
                  Use of Force Occurred. ................................................................13

            3.    The Undisputed Evidence Shows that the Request to the
                  Officers for a Citizen's Arrest of Mr. Moore Was Implied
                  by Conduct. ..................................................................................15

      B.    The Undisputed Facts Show that Officer Cha's Use of Pepper
            Spray Was Objectively Reasonable, and Thus Did Not Violate
            the Fourth Amendment. .............................................................................17

            1.    Severity of the Crime at Issue ......................................................18

            2.    Immediate Threat of Danger .........................................................18

            3.    Active Resisting or Evading Arrest ...............................................19

      C.    Office Cha's Use of Pepper Spray Was Not Negligent. ............................20

CONCLUSION..................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Brown v. Ransweiler*
    171 Cal. App .4th 516 (2009) ................................................................20

*Johanson v. Dept. of Motor Vehicles*
    36 Cal.App.4th 1209 (1995) ................................................................15

*Padilla v. Meese*
    184 Cal.App.3d 1022 (1986) ................................................................15

*People v. Burton*
    219 Cal. App.4th Supp. 9 (2013) ................................................................17

*People v. Camacho*
    23 Cal. 4th 824 (2000) ................................................................11

*People v. Chavez,*
    161 Cal. App. 4th 1493 (2008) ................................................................11

*People v. Ibarra*
    156 Cal. App. 4th 1174 (2007) ................................................................14

*People v. Lieng*
    190 Cal. App. 4th 1213 (2010) ................................................................9

*People v. Lujano*
    229 Cal. App. 4th 175 (2014) ................................................................14

*People v. Moore*
    2018 WL 2016792 (May 1, 2018) ................................................................15

*People v. Superior Ct.*
    135 Cal.App.3d 812 (1982) ................................................................19

**State Statutes & Codes**

California Penal Code
    § 415(2) ................................................................19

California Penal Code
    § 422 ................................................................19

California Penal Code
    § 71 ................................................................19

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................................3, 8

*Arpin v. Santa Clara Valley Transp. Agency*
  261 F.3d 912 (9th Cir. 2001) .......................................................................15

*Atwater v. City of Lago Vista*
  532 U.S. 318 (2001) ....................................................................................17

*Banks v. Mortimer .*
  2019 WL 4600941 (N.D. Cal. Sept. 23, 2019) ............................................4

*Boyd v. United States*
  116 U.S. 616 (1886) ......................................................................................9

*Brinegar v. United States*
  338 U.S. 160 (1949) ....................................................................................13

*California v. Ciraolo*
  476 U.S. 207 (1986) .................................................................................9, 11

*Coleman v. Quaker Oats Co.*
  232 F.3d 1271 (9th Cir. 2000) ...............................................................6, 7, 8

*County of Los Angeles v. Mendez*
  – U.S. –, 137 S. Ct. 1539 (2017) ...................................................................2

*Day v. Vivet*
  2012 WL 1977960 (W.D. Wash. June 1, 2012) ..........................................18

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*
  375 F.3d 861 (9th Cir. 2004) .........................................................................5

*Eastman Kodak Co. v. Image Technical Services, Inc.*
  504 US 451 (1992) .........................................................................................3

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*
  249 F.3d 1132 (9th Cir. 2001) .......................................................................4

*Felarca v. Birgeneau*
  891 F.3d 809 (9th Cir. 2018) .......................................................................18

*Florida v. Jardines*
  569 U.S. 1 (2013) ...................................................................................11, 12

*Graham v. Connor*
  490 U.S. 386 (1989).........................................................................8, 17, 18

*Hayes v. City of San Diego*
  736 F.3d 1223 (9th Cir. 2013) .....................................................................20

*Headwaters Forest Defense v. Humboldt*
  276 F.3d 1125 (9th Cir. 2002) .....................................................................18

*Jackson v. Bremerton*
     268 F.3d 646 (9th Cir. 2001) ...........................................................................18

*Klein v. Boeing Co.*
     847 F. Supp. 838 (W.D. Wash. 1994)...........................................................6, 8

*Kohler v. Bed Bath & Beyond of Cal., LLC*
     2012 WL 2449928 (C.D. Cal. June 27, 2012) ...............................................3

*Long v. Honolulu*
     511 F.3d 901 (9th Cir. 2007) ...........................................................................17

*Malek v. Green*
     2017 WL 4284117 (N.D. Cal. Sept. 27, 2017) .............................................6

*Mateo v. The M/S Kiso*
     805 F.Supp. 761 (N.D. Cal. 1991) .................................................................3

*Moreland v. Las Vegas Metropolitan Police Dept.*
     159 F.3d 365 (9th Cir. 1998) ...........................................................................5

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*
     182 F.3d 157 (2d Cir. 1999) ............................................................................3

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*
     210 F.3d 1099 (9th Cir. 2000) .........................................................................3

*Oliver v. United States*
     466 U.S. 170 (1984)..........................................................................................9

*Padula v. Leimbach*
     656 F.3d 595 (7th Cir. 2011) ...........................................................................19

*Pan Am World Airways, Inc. v. United States Dist. Ct.*
     523 F.2d 1073 (9th Cir. 1975) .........................................................................6

*Payton v. New York*
     445 U.S. 573 (1980)..........................................................................................9

*Perez v. City of Santa Cruz*
     2017 WL 6026246 (N.D. Cal. Dec. 5, 2017)..................................................14

*Rivera v. City of Santa Ana*
     2011 WL 717369 (C.D. Cal. Feb. 18, 2011) .............................................6, 7, 8, 13

*Rose v. City of Los Angeles*
     814 F. Supp. 878 (C.D. Cal. 1993) ..............................................................4, 5

*S.B. v. County of San Diego*
     864 F.3d 1010 (9th Cir. 2017) .........................................................................18

*Tennessee v. Garner*
   471 U.S. 1 (1985)................................................................................................17

*U.S. v. Crapser*
   472 F.3d 1141 (9th Cir. 2007) ..........................................................................10

*U.S. v. Vaneaton*
   49 F.3d 1423 (9th Cir. 1995) ............................................................................10

*United States v. Dibble*
   429 F.2d 598 (9th Cir. 1970) ..............................................................................3

*United States v. Dunn*
   480 U.S. 294 (1987)......................................................................................9, 10

*United States v. Jerez*
   108 F.3d 684 (7th Cir. 1997) ............................................................................12

*United States v. Johnson*
   256 F.3d 895 (9th Cir. 2001) ..............................................................................9

*United States v. Magana,*
   512 F.2d 1169 (9th Cir. 1975) ..........................................................................11

*United States v. Santana*
   427 U.S. 38 (1976)............................................................................................10

*United States v. Smith*
   790 F.2d 789 (9th Cir. 1986) ............................................................................13

*Watts v. United States*
   703 F.2d 346 (9th Cir. 1983) ..............................................................................3

*West v. Atkins*
   487 U.S. 42 (1988)..............................................................................................8

*Wishum v. California*
   2014 WL 3738067 (N.D. Cal. July 27, 2014)................................................4, 5

**Federal Statutes**
42 U.S.C. § 1983 ............................................................................................5, 8

Federal Rules of Civil Procedure
   Rule 19(a) ........................................................................................................5, 6

Federal Rules of Civil Procedure
   Rule 19(a)(1)(B) ..................................................................................................5

Federal Rules of Civil Procedure
   Rule 19(a)(2) ........................................................................................................5

Federal Rules of Civil Procedure
  Rule 25(b) ..........................................................................................................7

Federal Rules of Civil Procedure
  Rule 56(a) ..........................................................................................................3

Federal Rules of Civil Procedure
  Rule 56(c) ..........................................................................................................4

**Other Authorities**

*Cal. Practice Guide: Federal Civil Procedure Before Trial* ¶ 14:27.1 (2020)...............................7

*Cal. Practice Guide: Federal Civil Procedure Before Trial* ¶ 7:65 (2020)....................................5

1

**INTRODUCTION**

2    Plaintiffs' motion for partial summary judgment should be denied on procedural and

3   substantive grounds.  With respect to the procedural posture of this case, Plaintiffs' motion is not

4   properly before the Court.  Plaintiffs did not provide the documentation needed to bring any claims for

5   relief as the decedent's purported successors-in-interest.  Also, the decedent's brother, Mr. Kenneth

6   Wayne Blackmon, should be joined to the action as a party in order to protect his legal right and/or

7   interest as a co-successor-in-interest.  Furthermore, the pleadings and claims at issue are presently

8   unsettled because the operative complaint (by Sean Moore) does not identify which claims and

9   theories of liability are alleged by the substituted Plaintiffs, Cleo and Loyce Moore.  Lastly, Plaintiff

10   Loyce Moore cannot pursue any claims against Defendants because, per Plaintiffs, he is incompetent

11   to do so, but has not filed a motion to request that a personal representative be appointed.

12    With respect to the substance of Plaintiffs' motion, under the Fourth Amendment there was no

13   reasonable expectation of privacy on the stairway between the sidewalk and the metal security gate for

14   Mr. Moore's front door, i.e., the purported "curtilage" of his home.  All of that area was open and

15   visible to the public, including from the sidewalk, and none of that area was enclosed by a fence or

16   anything else to protect it from observation.  Furthermore, the Fourth Amendment's concern with

17   seizures inside a home is not implicated with an arrest at or near a front door provided that the door is

18   visible from the street.

19    In addition, the officers had sufficient probable cause to arrest Mr. Moore for a violation of the

20   restraining order, among other offenses. ████████████████████████████████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████ Therefore, because Plaintiffs failed to

28   carry their burden, their motion for summary adjudication should be denied.

1

### STATEMENT OF FACTS

The pertinent facts are stated in Defendants' Memorandum of Points And Authorities In Support of Summary Judgment (Doc. No. 94, filed Oct. 30, 2020), and in the supporting documents for Defendants' motion; all such facts and material are incorporated herein by reference.  Additional facts and evidence are cited herein, *infra*.  Furthermore, certain of the purported "facts" cited by Plaintiffs' summary adjudication motion are not supported with evidence:

• Plaintiffs argue that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[1]

• Plaintiffs argue that ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

• Plaintiffs argue that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

• Plaintiffs argue that ███████████████████████████████████████████████████████████████████████████████████████████.

• Plaintiffs argue that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1] The Supreme Court does not recognize Plaintiffs' "provocation" theory, i.e., that the officers' conduct violated the Fourth Amendment because it compelled Sean Moore to take action that then necessitated the officers' use of force.  *County of Los Angeles v. Mendez*, – U.S. –, 137 S. Ct. 1539, 1543-44 (2017).

1  ███████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  █████████████████████████████████████████████████████████

4  ██████████████████████████████████████.

5  • Plaintiffs argue that ████████████████████████████████████

6  █████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ██████████████████████████████████████████

9  █████████████████████████████████████████████████

10 ████████████████████████████████████.

## LEGAL STANDARDS

A motion for summary judgment cannot be granted unless the moving party shows that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "To obtain a summary judgment in favor of a claim, 'the moving party must offer evidence sufficient to support a finding upon every element of his [or her] claim.'" *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983) (quoting *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970)). Where a plaintiff is the moving party, this is a "relatively heavier burden." *Mateo v. The M/S Kiso*, 805 F.Supp. 761, 775 (N.D. Cal. 1991); *Kohler v. Bed Bath & Beyond of Cal., LLC*, No. EDCV 11–01246 VAP (OPx), 2012 WL 2449928, at *5 (C.D. Cal. June 27, 2012) (same; citing *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999)). When making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 US 451, 456 (1992) (holding that "the nonmovant's version of any disputed issue of fact is presumed correct").

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted). If a moving party carries its initial burden,

then the burden shifts to the nonmoving party, who may defeat the motion by: presenting a genuine,

triable issue of material fact (Fed. R. Civ. Proc. 56(c)(1)(A)); showing the moving party's materials

fail to establish absence of a genuine dispute (*Id.* 56(c)(1)(B)); showing the moving party cannot

produce admissible evidence to support its factual position (*Id.* 56(c)(1)(B)); or objecting to the

moving party's materials as inadmissible in evidence (*Id.* 56(c)(2)).  When cross-motions for summary

judgment are filed on the same claim, the court must consider the evidence submitted with both

motions before ruling on either motion.  *Fair Housing Council of Riverside County, Inc. v. Riverside

Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## ARGUMENT

## I.    Plaintiffs' Motion Should Be Denied Because It Is Not Properly Before the Court.

### A.    Plaintiffs Did Not Provide the Documentation Needed to Bring Any Claims for Relief as the Decedent's Purported Successors-in-Interest.

California law requires a party purporting to act as a decedent's successor-in-interest (i.e., to

bring a survival action) to demonstrate that he or she is authorized to do so.  Specifically, the claimed

successor(s)-in-interest must file an affidavit or declaration establishing the basis for such designation,

and provide a certified copy of the decedent's death certificate under California Code of Civil

Procedure section 377.32.  *Wishum v. California*, No. 14-cv-01491-JST, 2014 WL 3738067, at *2, *4

(N.D. Cal. July 27, 2014).  "Where there is no personal representative for the estate, the decedent's

'successor in interest' may prosecute the survival action if the party purporting to act as successor in

interest satisfies the requirements of California law."  *Id.* (dismissing survival claims for lack of

standing because plaintiffs did not submit a declaration establishing right to relief as successor-in-

interest); *see also Rose v. City of Los Angeles*, 814 F. Supp. 878, 881-82 (C.D. Cal. 1993) (granting

motion to dismiss survival action brought by parent who claimed nothing more than being "the

decedent's sole heir" because parent lacked the necessary authorization under California law); *Banks

v. Mortimer*, No. 18-cv-07391-HSG, 2019 WL 4600941, at *3-4 (N.D. Cal. Sept. 23, 2019) (stating

requirements for survival claim, holding that plaintiff cannot sue as successor-in-interest where

decedent's estate has a personal representative, and holding that "under California law . . . [i]t is not

enough simply to be related to the decedent"); *and see Moreland v. Las Vegas Metropolitan Police

*Dept.*, 159 F.3d 365, 369-70 (9th Cir. 1998) (noting that in Section 1983 actions, plaintiffs can assert Fourth Amendment claims on a decedent's behalf but have the burden of demonstrating that state law authorizes them to do so and holding that the district court did not err in dismissing the case for lack of standing under Nevada law).

Here, Plaintiffs Cleo Moore and Loyce Moore have not provided the necessary documentation showing that they are allowed to prosecute claims on behalf of the decedent, Mr. Moore, either individually or jointly. *Wishum*, 2014 WL 3738067 at *2, *4; *Rose*, 814 F. Supp. at 881-82; *Banks*, at *3-4; *Moreland*, 159 F.3d at 369-70. This concern is of particular significance where, as here, an additional successor-in-interest and/or additional plaintiff may exist, namely, the decedent's brother, Mr. Kenneth Wayne Blackmon. *See* Defendants' Initial Disclosures, served June 15, 2018 (identifying Mr. Blackmon as "Plaintiff's brother"). Therefore, because Plaintiffs cannot proceed with their claims for relief, their motion for partial summary judgment should be denied.

### B.   Plaintiffs Failed to Join a Necessary Party.

Based on the information available to Defendants, it appears that the decedent's brother, Mr. Kenneth Wayne Blackmon, should be joined to the action as a party in order to protect his legal right and/or interest as a co-successor-in-interest. Fed. R. Civ. P. 19(a)(1)(B). "The primary purpose of Rule 19(a) is to assure that any judgment rendered will provide complete relief to the existing parties and prevent repeated lawsuits on the same subject matter." William W. Schwarzer, et al., *Cal. Practice Guide: Federal Civil Procedure Before Trial* ¶ 7:65 (2020). Indeed, the brother of the decedent appears to be an indispensable party because the absence of that party (a) would "as a practical matter impair or impede the person's ability to protect the interest," and (b) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B); *see Disabled Rights Action Committee v. Las Vegas Events, Inc.* 375 F.3d 861, 867 n.5 (9th Cir. 2004) (holding that an "indispensable party" has a legally protected interest in the outcome of the litigation, and that a lawsuit must be dismissed if an indispensable party has not been joined). "If such persons are allied in interest with the plaintiff, they should be named as coplaintiffs. However, if they refuse to join as plaintiffs, they may be named as defendants or as 'involuntary plaintiffs.'" Schwarzer, ¶ 7:87 (citing Fed. R. Civ. P. 19(a)(2) and *Pan*

*Am World Airways, Inc. v. United States Dist. Ct.*, 523 F.2d 1073, 1079 (9th Cir. 1975)).  Therefore, because Plaintiffs failed to join a necessary party, their motion for partial summary judgment is not properly before the Court and should be denied.

### C.   The Operative Complaint Does Not Identify Which Claims and Theories of Liability Are Alleged by Plaintiffs Cleo and Loyce Moore.

Assuming, *arguendo*, that Plaintiffs Cleo and Loyce Moore satisfied the prerequisites to proceed with claims in this case, the pleadings and claims at issue are presently unsettled.  Even though the Court granted Cleo and Loyce Moore's request to be substituted into the case as parties on February 18, 2020 (Doc. No. 71), in the subsequent nine month period Plaintiffs have not requested leave to amend the complaint.  On September 4, 2020, the Court ordered Plaintiffs to amend their complaint no later than September 11, 2020.  Doc. No. 88 (Order on Defendants' Motion to Continue Trial Date, filed Sept. 9, 2020).  Plaintiffs failed to amend the complaint.  Thus, it is unclear which claims Plaintiffs intend to pursue, including: whether they will seek to maintain survival actions as Mr. Moore's successors-in-interest for his claims; whether any other family member or co-successor-in-interest must be joined to the action as a necessary party under Federal Rule of Civil Procedure 19(a), e.g., the decedent's brother, Kenneth Wayne Blackmon; and whether Plaintiffs will seek to add their own wrongful death claims.

The absence of any complaint by Plaintiffs Cleo and Loyce Moore also bars them from obtaining summary judgment on any claims.  "On a motion for summary judgment, Plaintiffs' allegations and theories of liability are confined to those found in the operative complaint."  *Rivera v. City of Santa Ana*, No. SACV 09–1322 DOC (RNBx), 2011 WL 717369, at *5 n.3 (C.D. Cal. Feb. 18, 2011) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000)); *Malek v. Green*, No. 17-cv-00263-BLF, 2017 WL 4284117, at *23 (N.D. Cal. Sept. 27, 2017) ("[A] final determination on these issues is more appropriate when the operative pleading on the constitutional violations is set and it is clear which constitutional claims will proceed"); *see also Klein v. Boeing Co.*, 847 F. Supp. 838, 844 (W.D. Wash. 1994) ("Klein never asserted this claim prior to his opposition to Boeing's motion for summary judgment, nor has he moved to amend his complaint to add such a claim.  Thus, this claim is not properly before the court.")  "Normally, summary judgment cannot be granted on the

basis of claims . . . not pleaded."  William W. Schwarzer, *Cal. Practice Guide: Federal Civil Procedure Before Trial* ¶ 14:27.1 (2020).

In *Rivera*, because the operative complaint did not include the specific theory of liability asserted by the plaintiff on summary judgment, the court "decline[d] to consider Plaintiff's argument that excessive force occurred at the scene of his arrest."  2011 WL 717369, at *5 n.3.  Similarly, in *Coleman*, the Ninth Circuit held that the plaintiffs were barred from proceeding on any theories of liability on summary judgment if they failed to plead those theories in the operative complaint.  232 F.3d at 1292-94 (allowing the plaintiffs to proceed only on the theories that they included in their complaint).  "Thus, we hold that the plaintiffs . . . were required . . . to plead the . . . theory in their complaint," and "[b]ecause [the plaintiffs] raised the . . . theory of liability for the first time at summary judgment, the district court did not err when it did not allow them to proceed on it."  *Id.* at 1294.  Because of the uncertain nature of the parties and claims that are at issue, including that the operative complaint is by decedent Sean Moore (not the substituted Plaintiffs), Plaintiffs' motion for partial summary judgment should be denied.

### D.    Plaintiff Loyce Moore Cannot Pursue Any Claims Against Defendants.

Under Rule 25, when a party becomes incompetent, they may not pursue their claims unless they file a motion with the court requesting that their representative be allowed to pursue their claims.  Fed. R. Civ. P. 25(b).  Here, on July 30, 2020, Plaintiffs' counsel informed Defendants that Plaintiff Mr. Loyce Moore is an "invalid" and unable to testify in this case because of his health condition.  *See also* Doc. No. 86, at 5:5-6, 10:1 (asserting that Loyce Moore is "in hospice care," "is incompetent to testify," and "cannot be deposed").  Plaintiffs have not filed a motion with this Court to request that a personal representative be allowed to pursue Mr. Loyce Moore's claims.  Thus, because the motion for partial summary judgment by Plaintiff Loyce Moore is not properly before the Court, his motion should be denied on that basis.

///
///
///
///

**II.    Plaintiffs' Motion for Partial Summary Judgment Should Be Denied Because They Failed to Carry Their Initial Burden.**

The complaint in this action arises under 42 U.S.C. section 1983 and alleges violations of the Fourth and First Amendments, the ADA, *Monell* liability, and state law torts.  Section 1983 is not itself a source of substantive rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional challenges to actions by state and local officials.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To prevail under Section 1983, a plaintiff must prove that the defendant acted under color of law and deprived plaintiff of a federal or constitutional right.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, Plaintiffs' motion for partial summary judgment requests that the Court find that: (1) the second time that Officers Cha and Patino walked up the stairway between the sidewalk and Mr. Moore's metal security gate (i.e., within the "curtilage" of his home) to continue their investigation, the officers' entry was unlawful under the Fourth Amendment; (2) Officer Cha's use of the pepper spray on Mr. Moore constituted excessive force (i.e., was an unlawful seizure) under the Fourth Amendment; and (3) Officer Cha's use of the pepper spray was negligent under state law.

**A.    Plaintiffs Do Not Allege Unlawful Entry, and Regardless, the Undisputed Facts Show Probable Cause for Arresting Mr. Moore.**

As a threshold matter, Plaintiffs do not allege a claim for unlawful entry under the Fourth Amendment or any state law.  *See generally* Complaint (Doc. No. 1) (alleging only "unlawful seizure" and "excessive force" under the Fourth Amendment, but not unlawful entry).  Summary judgment cannot be granted on the basis of claims not pleaded.  *Rivera*, 2011 WL 717369, at *5 n.3; *Coleman*, 232 F.3d at 1292; *Klein*, 847 F. Supp. at 844; Schwarzer, ¶ 14:27.1.  Thus, to the extent Plaintiffs seek summary adjudication with respect to the officers' legal authority to walk up Mr. Moore's front stairs the second time to continue their investigation (Ps' Brief p. 14 lns. 16 to 23), or that in doing so the officers "trespassed" within the "curtilage" of Mr. Moore's home (*id.* p. 1 lns. 2 to 3, p. 13 lns. 22-28, p. 11 ln. 9 to p. 12 ln. 19), those issues are not properly before the Court.

///

///

1.      **There Was No Reasonable Expectation of Privacy on the Open Stairwell Between the Public Sidewalk and the Metal Security Gate Outside the Front Door.**

Even assuming, *arguendo*, that the Court can consider Plaintiffs' motion despite its procedural flaws, the evidence does not show either a Fourth Amendment unlawful entry or a state law trespass on the "curtilage" of Mr. Moore's home.  The Fourth Amendment protects an individual's reasonable expectation of privacy in their own home.  U.S. Const. amend. IV; *Payton v. New York*, 445 U.S. 573, 585 (1980).  "[T]he curtilage is the area to which extends the intimate activity associated with the 'sanctity of a [person's] home and the privacies of life.'"  *Oliver v. United States*, 466 U.S. 170, 180 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).  "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212-213 (1986).

As a general rule, the extent of curtilage on properties in urban settings is significantly less than for properties in suburban or rural settings.  *See United States v. Johnson*, 256 F.3d 895, 902 (9th Cir. 2001); *People v. Lieng*, 190 Cal. App. 4th 1213, 1223-24 (2010).  The Supreme Court uses a four factor test to determine the parameters of curtilage: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987).  The "factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration – whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 301.

Here, there was no reasonable expectation of privacy on the stairway between the sidewalk and the metal security gate for Mr. Moore's front door because all of that area was open and visible to the public, including from the sidewalk, and none of that area was enclosed by a fence or anything else to protect it from observation.  The *Dunn* factors weigh heavily in favor of this conclusion.  On the one hand, the stairway appears to be relatively close to the home.  But on the other hand, there is a locked metal security gate between the stairway and the front door of the home, there are no gates or fences

between the stairway and the public sidewalk, the stairway is available for use by the public and delivery services to access the front door, and there is no evidence that Mr. Moore took any affirmative steps to shield or protect his activities on the stairs from public view.  As the Court observed in *Dunn*, the boundaries of the curtilage will typically be "clearly marked" and "easily understood from our daily experience." 480 U.S. at 302 (quotes and citation omitted).  The most commonly encountered lines of demarcation are "fences" and "gates," which the court characterized as "important factors in defining the curtilage." *Id.* at 301 and n.4; *see also* 304 (holding that no constitutional violation occurred because the agents stopped when they reached "locked wooden gates" that barred entry to a barn).  Thus, the only "clearly marked" and "easily understood" curtilage for Mr. Moore's home (per *Dunn*, 480 U.S. at 301-304) was the area *behind* the locked metal security gate – which was not the location of any alleged unlawful conduct by the officers.  As a matter of law, therefore, there was no reasonable expectation of privacy in the area in question.[2]

Courts addressing this issue in the context of arrests at or near a front door consistently hold that the Fourth Amendment is not implicated provided that the front door is visible from the street. *See*, *e.g.*, *United States v. Santana*, 427 U.S. 38, 40-42 (1976) (holding that such an arrest does not implicate the Fourth Amendment because there is no reasonable expectation of privacy); *U.S. v. Vaneaton*, 49 F.3d 1423, 1426-27 (9th Cir. 1995) (holding that a warrantless arrest at a front door did not offend the Fourth Amendment because "[w]hen Vaneaton saw them through the window, he voluntarily opened the door and exposed both himself and the immediate area to them"); *U.S. v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) (holding that after a suspect voluntarily opens to door in response to a knock by police, "the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity" [alteration in original]).  Similarly, any purported curtilage that consists of the normal access route for anyone visiting the property enjoys less protection because it is considered, at most, "only a semiprivate area."

---

[2] Plaintiffs refer to Sean Moore's "front porch" (Ps' Brief, p. 11 lns. 9 to 13 and lns. 17 to 20, p. 17 lns. 22 to 23), but there is no evidence of a porch on the subject property, or that any unlawful conduct by the officers occurred there.  The only evidence on this issue █████████████████

*United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975) (regarding driveway to residence).

Here, it is undisputed that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████. Under such circumstances, there was no reasonable expectation of privacy.

California cases are in accord with the above authority. "What a person knowingly exposes to the public, even in his own home . . . , is not a subject of Fourth Amendment protection." *People v. Camacho*, 23 Cal. 4th 824, 831 (2000) (quoting *Ciraolo*, 476 U.S. at 213). "It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house." *People v. Chavez*, 161 Cal. App. 4th 1493, 1500 (2008). Therefore, the efforts by Officers Cha and Patino to attempt to question, detain, and ultimately arrest Mr. Moore on the stairs did not implicate the "curtilage" of his residence per the Fourth Amendment. *A fortiori*, there was no requirement (as argued by Plaintiffs) that the officers' attempt to arrest Mr. Moore also be supported by "exigent circumstances." Ps' Brief p. 11 ln. 20 to p. 12 ln. 6.

Plaintiffs' "curtilage" argument is predicated on *Florida v. Jardines*, 569 U.S. 1 (2013), but that case is factually distinguishable. Ps' Brief p. 11 ln. 4 to p. 12 ln. 19. In *Jardines*, the police entered the "front porch" of the suspect's home with a "drug-sniffing dog" who was trained to detect "airborne odors" of narcotics emanating from within the home. *Id.* at 3-4. The police dog began "exploring the area," "sniff[ed] the base of the front door" of the home, and sat down at the front door to indicate the strongest point of the odor. *Id.* at 4. The Florida Supreme Court held "that the use of the trained narcotics dog to investigate Jardines' home was a Fourth Amendment search unsupported by probable cause," and the Supreme Court affirmed. *Id.* at 5. The United States Supreme Court emphasized not just the location of the search, i.e., the "front porch" or "curtilage," but that the police "trawl[ed] for evidence with impunity," and that it would be alarming to any homeowner "for a stranger to explore the curtilage of the home with trained drug dogs." *Id.* at 6, 8 n.2; *see also id.* at 8 n.1 (contrasting the use of a drug-sniffing dog to conduct a search with officers merely "lawfully approach[ing] his home to knock on the front door in hopes of speaking with him").

///

1    Here, ███████████████████████████████████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    █████████████████████████.  Regardless of the precise parameters of the space, none of the

9    alleged unlawful conduct here occurred in the area behind the metal security gate, rather it all occurred

10   on the open stairwell in front of the metal security gate that directly lead to the public sidewalk.

11        Plaintiffs also rely on a Seventh Circuit opinion, *United States v. Jerez*, 108 F.3d 684 (7th Cir.

12   1997) to argue that the encounter between the officers and Mr. Moore "was not consensual."  Ps' Brief

13   p. 12 ln. to p. 13 ln. 13.  However, the officers in *Jerez* did "not necessarily [have] 'reasonable

14   suspicion' to knock on the [motel] door and window" to talk to the occupants, whereas here ███

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████.  108

17   F.3d at 688.  Also, the officers in *Jerez* woke up the sleeping motel occupants with yelling and

18   banging on the door and windows and demanded admission inside their room, and the occupants

19   refused to admit them, whereas here ██████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ██████████████████████████.  108 F.3d at 690.  ████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ███████████████████

26   ///

27   ///

28   ///

1

**2.    The Officers Had Reasonable Suspicion to Detain Mr. Moore and Probable Cause to Arrest Him Before Any Use of Force Occurred.**

2

3      Although Plaintiffs' motion does not request summary adjudication of the unlawful seizure

4   claim,[3] Plaintiffs nonetheless argue that Officers Cha and Patino lacked probable cause to arrest Mr.

5   Moore.  P's Brief p. 13 lns. 13 to 28, p. 14 ln. 23 to p. 15 ln. 8.  The only criminal offense Plaintiffs

6   refer to is Mr. Moore's violation of the restraining order.  *Id.*  Accordingly, Plaintiffs' motion does not

7   challenge the officers' reasonable suspicion or probable cause for detaining Mr. Moore during their

8   investigation, or for arresting him for willfully interfering with their investigation, for his threats

9   against the officers, and for his assaults on the officers.

10     Probable cause exists when "under the totality of the circumstances known to the arresting

11  officers, a prudent person would have concluded that there was a fair probability that [the suspect] had

12  committed a crime."  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).  "The evidence

13  necessary to establish probable cause falls well below that necessary to sustain a conviction."  *Rivera*

14  *v. City of Santa Ana*, No. SACV 09–1322 DOC (RNBx), 2011 WL 717369, at *2 (C.D. Cal. Feb. 18,

15  2011) (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

16

> *These long-prevailing standards . . . seek to give fair leeway for enforcing the law in the community's protection.*  Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.  The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.  Requiring more would unduly hamper law enforcement.  To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

17

18

19

20

21

22

23  *Brinegar*, 338 U.S. at 175-76 (emphasis added; affirming judgment that facts known to officer

24  supported determination of probable cause).

25     Although Mr. Moore denied violating the restraining order, the law did not require the officers

26  to accept his statement at face value and stop their investigation.  *See Perez v. City of Santa Cruz*, No.

27

28     ───────────
       [3] Complaint (Doc. No. 1) at 10:2-10 (alleging claim of "unlawful seizure" under the Fourth Amendment based on absence of "probable cause to arrest Plaintiff [Sean Moore]").

15-cv-02527-BLF, 2017 WL 6026246, at *7 (N.D. Cal. Dec. 5, 2017) ("[A]lthough an officer may not ignore exculpatory evidence that would negate a finding of probable cause, the officer may assess the credibility of evidence when determining whether to arrest a suspect.")  And where an explanation to police officers by a suspect regarding alleged criminal conduct is "patently inconsistent, false, or inherently implausible," the explanation itself can "furnish a reasonable basis for suspecting criminal activity."  *People v. Lujano*, 229 Cal. App. 4th 175, 185 (2014).

████████████████████████████████████████████████████████████████████████████████

. *See also* Defendants' Memorandum of Points And Authorities In Support of Summary Judgment (Doc. No. 94), pp. 5-7.

  Plaintiffs' motion also quotes from the appellate opinion for the criminal case against Mr. Moore arising from this incident, including that the prosecution did not prove an element for certain criminal offenses, i.e., that Officers Cha and Patino were "lawfully performing their duties."  Ps' Brief p. 1 ln. 12 to p. 2 ln. 3.  In so doing, Plaintiffs incorrectly suggest that the officers were trespassing on

the "curtilage" of the home, and that they lacked probable cause for the arrest. However, the appellate court assumed without deciding that the stairway was included in the "curtilage" of Mr. Moore's home only because the parties did not dispute and brief that issue. *People v. Moore*, No. A151276, 2018 WL 2016792, at *6 n.7 (May 1, 2018). Also, the appellate court specifically held that the officers did have probable cause, specifically, for certain crimes not before the court in that action, including simple battery. *Id.* at *8 ("If Patino was not engaged in the performance of his law enforcement duties when Moore allegedly punched him, Moore was not immune from prosecution for battery.").

### 3.  The Undisputed Evidence Shows that the Request to the Officers for a Citizen's Arrest of Mr. Moore Was Implied by Conduct.

Plaintiffs argue that Officers Cha and Patino were not authorized to make a citizen's arrest of Mr. Moore. Specifically, Plaintiffs argue that "[n]either Defendant ever asked Mr. Choy to make a citizen's arrest," and/or that Mr. Choy did not "let the officers know that [he] want[ed] to make a citizen's arrest." Ps' Brief p. 3 lns. 9 to 11, and p. 9 lns. 6 to 13. However, the law does not require an explicit request from the victim, and the undisputed evidence shows that Mr. Choy's conduct prior to and during the incident demonstrates an implied request for a citizen's arrest of Mr. Moore.

With respect to citizen's arrests, "the citizen need not use any 'magic words' and arrest 'may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect.'" *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) (quoting *Johanson v. Dept. of Motor Vehicles*, 36 Cal.App.4th 1209, 1216-1217 (1995) [inferring citizen's arrest even though citizen stated that he did not intend to make a citizen's arrest]); *see also Padilla v. Meese*, 184 Cal.App.3d 1022, 1030 (1986) (implying citizen's arrest even though citizen did not state that he wished to charge the perpetrator with the offense for which he was arrested). Consistent with these cases, SFPD policy states that a citizen's arrest may be predicated on the officer's determination of the complaining party's intent. DGO 5.04. And the officers were not required by their training to obtain a formal statement from the victim of, e.g., "I want you to arrest that person." Flores Depo. 12:1-7; 17:4-14; 18:17-22 (attached as Ex. B to Whitman Decl. ISO Ds' MSJ).

That is what happened here. Mr. Choy called the police and reported that Mr. Moore pounded on his wall in violation of the restraining order. Ps' Brief p. 2 ln. 16 to p. 3 ln. 10. While Officer

Patino was speaking with Mr. Choy, he obtained a copy of the TRO from Mr. Choy with its proof of

service on Mr. Moore, and Mr. Choy identified "Mr. Moore" as the person "hitting my wall."  Ps' MSJ

Ex. 2 (Testimony by Mr. Choy), pp. 24-26. 

Thus, Mr.

Choy's request for a citizen's arrest of Mr. Moore can be implied from Mr. Choy's conduct, his

communications with the officers, and his identification of Mr. Moore.[4]

Plaintiffs also argue that a denial by the criminal suspect requires that the officers "return to the

victim to see what they want the officer to do."  Ps' Brief p. 4 n.1, and p. 9 lns. 20-23 (citing Flores

Depo.).  Plaintiffs misrepresent the testimony.  Sergeant Inspector Flores actually testified that the

officer would need to "determin[e] . . . what that person [the victim] wants done," i.e., whether to

arrest the suspect (Flores Depo. 33:2-12), and provided they are able to "gather more information," the

officer "could" go back to the victim (Flores Depo. 33:13 to 34:14).  The reason the officer is not

---

[4] At the criminal trial, the victim – Mr. Choy – was not asked whether he wanted the police to
arrest Mr. Moore.  *See generally* Ps' MSJ Ex. 2 (Doc. No. 99-2) (testimony by Mr. Choy).

required to go back and speak to the victim again is because the officer may properly infer that the victim wants the suspect arrested.  DGO 5.04; Flores Depo. 12:1-7; 17:4-14; 18:17-22.

Plaintiffs also argue that, "Defendants were trained that when there are conflicting stories, they may not enter the house of the suspect and arrest them because the offense is a misdemeanor that was not committed in their presence."  Ps' Brief p. 4 n.1 (citing Flores Depo.), p. 9 lns. 22 to 25 (citing Flores Depo.), and p. 13 lns. 14 to 25 (citing California statute and California case, neither of which involve an offense witnessed by a citizen and a citizen's arrest).  However, the Fourth Amendment does not require that a misdemeanor offense be committed in the officer's presence to justify a warrantless arrest.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 345 (2001); *see also People v. Burton*, 219 Cal. App.4th Supp. 9, 13-15 (2013) (citing *Atwater*, 532 U.S. 318).  Also, the hypothetical scenario presented to Sergeant Inspector Flores differs from the instant matter in significant respects: here, the offense was witnessed by the victim, a citizen's arrest occurred, and the officers did not "enter the house of [Mr. Moore]" to arrest him.

### B.    The Undisputed Facts Show that Officer Cha's Use of Pepper Spray Was Objectively Reasonable, and Thus Did Not Violate the Fourth Amendment.

Claims of excessive force are analyzed under a standard of reasonableness.  *Long v. Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  When evaluating the totality of the circumstances, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Id.* at 396-97; *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  Reasonableness is not judged from calm remove or the perspective of the arrestee: "[t]he 'reasonableness' of a particular use of

force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Of all these considerations, the "most important" is "whether the suspect posed an immediate threat to the safety of the officers or others." *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017).

An officer may reasonably use pepper spray to accomplish his lawful tasks when a suspect prevents the officers from doing so. *See e.g.*, *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018) (holding that use of pepper spray was reasonable to move protestors blocking officers' access to take down illegal tents); *Headwaters Forest Defense v. Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (holding that the use of pepper spray "may be reasonable as a general policy to bring an arrestee under control"); *see also Jackson v. Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (holding that the "nature and quality" of the intrusion from pepper spray "were minimal"); *see also Day v. Vivet*, No. C10–1523RSL, 2012 WL 1977960, at *7 (W.D. Wash. June 1, 2012) (denying plaintiff's summary judgment motion because officer safety could justify use of pepper spray).

### 1. Severity of the Crime at Issue

In considering the *Graham* factors, the evaluation of the crime at issue here is not as simple as Plaintiffs set forth in their moving papers. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### 2. Immediate Threat of Danger

The evaluation of the immediacy of the threat to the officers under *Graham* requires an evaluation of the totality of the circumstances from the beginning of the officers' contact with Mr. Moore up until the time the pepper spray was used. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, thereby violating California Penal Code section

415(2). *See People v. Superior Ct.*, 135 Cal. App. 3d 812 (1982) (shouting at officers in hotel hallway at 1:00 a.m. created probable cause for disturbing the peace). 

.[5] *See Padula v. Leimbach*, 656 F.3d 595 (7th Cir. 2011) (noting that pepper spray is "a very reasonable alternative to escalating a physical struggle with an arrestee").

   **3.   Active Resisting or Evading Arrest**

///

<hr />

[5]

1

2

3    ### C.    Office Cha's Use of Pepper Spray Was Not Negligent.

4    Plaintiffs also argue that Officer Cha's "seizure" of Mr. Moore (presumably, his use of pepper

5    spray) constituted negligence as a matter of law.  Ps' Brief p. 20 lns. 8 to 27.  The test for tort liability

6    under state law is the same as the test for unreasonable force under the Fourth Amendment.  *Hayes v.*

7    *City of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013); *Brown v. Ransweiler*, 171 Cal. App .4th 516,

8    527 (2009).  Accordingly, Defendants refer the Court to their Fourth Amendment briefing herein,

9    *supra*, and to their briefing in support of their summary judgment motion (Doc. No. 94, at pp. 23-25).

10    ### CONCLUSION

11    For the reasons stated herein, the undisputed facts show that Plaintiffs cannot prove any of

12    their claims for relief or any of the discrete issues related thereto.  Therefore, Defendants request that

13    Plaintiffs' motion for partial summary judgment be denied.

14    DATE: November 13, 2020                    DENNIS J. HERRERA
                                                 City Attorney
15                                               MEREDITH B. OSBORN
                                                 Chief Trial Deputy
16                                               CHRISTOPHER B. WHITMAN
                                                 KELLY COLLINS
17                                               Deputy City Attorneys

18                                        By:    _/s/ Christopher B. Whitman_____
19                                               CHRISTOPHER B. WHITMAN
                                                 Attorneys for Defendants
20                                               CITY AND COUNTY OF SAN FRANCISCO,
                                                 KENNETH CHA and COLIN PATINO
21

22

23

24

25

26

27

28