DENNIS J. HERRERA, State Bar #139669
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
CHRISTOPHER B. WHITMAN, State Bar #223636
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-4240
Facsimile:      (415) 554-3837
Email:           chris.whitman@sfcityatty.org
Email:           kelly.collins@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
KENNETH CHA and COLIN PATINO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MOORE, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; KENNETH CHA, individually and in his capacity as a City of San Francisco Police Officer; COLIN PATINO, individually and in his capacity as a City of San Francisco Police Officer; and DOES 1-50, inclusive,<br><br>  Defendants. | Case No. 3:18-cv-00634-SI<br><br>**DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, OFFICER KENNETH CHA, AND OFFICER COLIN PATINO'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  December 4, 2020<br>Time:             10:00 a.m.<br>Place:            Courtroom One, 17th Floor<br>                      450 Golden Gate Ave.<br>                      San Francisco, CA 94102<br><br>Trial Date:      February 8, 2021 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................1
STATEMENT OF FACTS .....................................................................................................1
ARGUMENT ..........................................................................................................................1
    I.    The Detention and Arrest of Moore was Lawful Under the Fourth Amendment....1
    II.    The Officers' Force was Reasonable Under the Fourth Amendment......................3
    III.    Plaintiffs' First Amendment Retaliatory Arrest Claim Fails. ..................................4
    IV.    The Officers are Entitled to Qualified Immunity....................................................5
        A.    Officer Cha is Entitled to Qualified Immunity for Using Pepper Spray......5
        B.    Officer Patino is Entitled to Qualified Immunity for the Baton Strikes. .....6
        C.    Officer Cha is Entitled to Qualified Immunity for the Shooting. ................7
    V.    Plaintiffs Do Not Oppose Defendants' Motion for Summary Judgment on the *Monell* Claim. ..........................................................................................................7
    VI.    Plaintiffs' Bane Act Fails..........................................................................................7
    VII.    Plaintiffs' State Law Claims Fail..............................................................................9
    VIII.    Plaintiffs' ADA Claim Fails. ..................................................................................10
CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**State Cases**

*Amylou R. v. County of Riverside*
  28 Cal. App. 4th 1205 (1994) ...................................................................................................10

*Asgari v. City of L.A.*
  15 Cal. 4th 744 (1997) ..............................................................................................................10

*B.B. v. County of Los Angeles*
  25 Cal. App. 5th 115 (2018) .......................................................................................................8

*Bender v. County of Los Angeles*
  217 Cal. App. 4th 968 (2013) .....................................................................................................8

*Cornell v. City and County of S.F.*
  17 Cal. App. 5th 766 (2017) .......................................................................................................8

*County of Los Angeles v. Superior Ct.*
  181 Cal. App. 4th 218 (2009) .....................................................................................................9

*Edson v. City of Anaheim*
  63 Cal. App. 4th 1269 (1998) .....................................................................................................8

*Hayes v. County of San Diego*
  57 Cal. 4th 622 (2013) ................................................................................................................9

*Johnson v. City of Pacifica*
  4 Cal. App. 3d 82 (1970) ..........................................................................................................10

*Shoyoye v. County of L.A.*
  203 Cal. App. 4th 947 (2012) .....................................................................................................8

*Susag v. City of Lake Forest*
  94 Cal. App. 4th 1401(2002) ......................................................................................................8

**State Statutes & Codes**

California Government Code § 820.6 ...........................................................................................9, 10

California Government Code § 821.6 ...........................................................................................9, 10

**Federal Cases**

*Ashcroft v. al–Kidd*
  563 U.S. 731 (2011) ....................................................................................................................5

*Blankenhorn v. City of Orange*
  485 F.3d 463 (2007) ..................................................................................................................10

*Brigham City v. Stuart*
  547 U.S. 398 (2006) ....................................................................................................................3

*Buchanan v. City of San Jose*
   2019 WL 3384766 (9th Cir. July 26, 2019)..................................................................11

*City and County of San Francisco v. Sheehan*
   135 S. Ct. 1765 (2015)...................................................................................................11

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
   625 F.2d 231 (9th Cir. 1980) .........................................................................................9

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir. 2000) .......................................................................................2

*Corderio v. United States*
    638 Fed. Appx. 634 (9th Cir. 2016)...........................................................................5, 6

*Duran v. City of Douglas*
   904 F.2d 1372 (9th Cir. 1990) .......................................................................................4

*Glenn v. Washington Cnty.*
   673 F.3d 864 (9th Cir. 2011) .........................................................................................3

*Graham v. Connor*
   490 U.S. 386 (1989).......................................................................................................3

*Hainze v. Richards*
   207 F.3d 795 (5th Cir. 2000) .......................................................................................11

*Hayes v. City of San Diego*
   736 F.3d 1223 (9th Cir. 2013) .......................................................................................9

*Headwaters Forest Defense v. County of Humboldt*
   276 F.3d 1125 (9th Cir. 2002) ....................................................................................5, 6

*Isayeva v. Sacramento Sheriff's Dept.*
   872 F.3d 938 (9th Cir. 2017) .........................................................................................7

*Kisela v. Hughes*
   138 S. Ct. 1148 (2018)..................................................................................................11

*Monell v. Department of Social Services of City of New York*
   436 U.S. 658 (1978)....................................................................................................1, 7

*Mullenix v. Luna*
   136 S. Ct. 305 (2015)......................................................................................................5

*Rayburn v. Huff*
   565 U.S. 469 (2012).........................................................................................................4

*Reichle v. Howards*
   566 U.S. 658 (2012).........................................................................................................4

*Scott v. Harris*
    550 U.S. 372 (2007) ..................................................................................................4

*Sheehan v. City and County of San Francisco*
    743 F.3d 1211 (2014) ............................................................................................10, 11

*U.S. v. Crapser*
    472 F.3d 1141 (9th Cir. 2007) ..................................................................................2

*U.S. v. Jensen*
    425 F.3d 698 (9th Cir. 2005) ....................................................................................5

*U.S. v. Vaneaton*
    49 F.3d 1423 (9th Cir. 1995) ....................................................................................2

*United States v. Santana*
    427 U.S. 38 (1976) ....................................................................................................2

*White v. Pauly*
    137 S. Ct. 548 (2017) ................................................................................................5

*Woods v. August*
    2018 WL 5841311 (N.D. Cal. October 9, 2018) ......................................................10

*Young v. County of Los Angeles*
    655 F.3d 1156 (9th Cir. 2011) ..............................................................................5, 6

**Regulations**
28 C.F.R. § 35.139(a) ....................................................................................................11

**INTRODUCTION**

In the early morning on January 6, 2017, San Francisco Police Department ("SFPD") Officers Kenneth Cha and Colin Patino used reasonable force against Sean Moore ("Moore") that did not violate the constitution or state law. Defendants moved for summary judgment because their actions did not violate the Fourth Amendment, First Amendment, or the ADA, and even if they did, qualified immunity protects them. Further, no evidence supports Plaintiffs' *Monell* or Bane Act claims against the City, and Plaintiffs cannot prove their state law claims of negligence, assault, and battery.

Plaintiffs opposed Defendant's motion ("Plaintiffs' Opposition") arguing: 1) Defendants did not have the right to arrest or detain Moore on his property without a warrant; 2) Defendants use of force was excessive; 3) Moore's profanities motivated the officers to retaliate and arrest him; 4) Defendants are not entitled to qualified immunity; 5) Defendants had specific intent to deprive Moore of his Fourth Amendment rights under the Bane Act; 6) Plaintiffs' state law claims must proceed; 7) the officers should have known about Moore's mental illness and provided him with a reasonable accommodation under the Americans With Disabilities Act ("ADA"). Plaintiffs did not oppose Defendants' Motion for Summary Judgment on Plaintiffs' *Monell* claim.

For the foregoing reasons, as well as those set forth in Defendants' moving papers (Doc. No. 94), the Court should grant Defendants' Motion for Summary Judgment.

**STATEMENT OF FACTS**

The pertinent facts are stated in Defendants' Memorandum of Points and Authorities In Support of Summary Judgment (Doc. No. 94), and in the supporting documents for Defendants' motion; all such facts and material are incorporated herein by reference. Plaintiffs also filed a Partial Motion for Summary Judgment (Doc. No. 99) that Defendants Opposed (Doc. No. 104).

**ARGUMENT**

**I.  The Detention and Arrest of Moore was Lawful Under the Fourth Amendment.**

Plaintiffs fail to address Defendants' argument that the officers had probable cause to arrest Moore, instead focusing on an unpled claim that the officers unlawfully entered Moore's property. As Defendants argued in their Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defendants' Opposition"), Plaintiffs' Complaint does not allege unlawful entry onto Moore's

property in violation of the Fourth Amendment or state law. (Doc. No. 104 at p. 8). Plaintiffs' Complaint alleges Fourth Amendment violations under theories of lack of probable cause and excessive force. (Doc. No. 1 at ¶¶ 47-40). Plaintiffs now attempt to improperly bootstrap an unpled claim of unlawful entry onto the existing claims. Theories not alleged in the Complaint cannot properly be relied upon to defeat summary judgment. See *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-1294 (9th Cir. 2000). Because the question of unlawful entry was not plead as a claim in the Complaint, such an argument cannot be used defeat summary judgment.

Regardless of the fact that Plaintiffs did not plead a claim of unlawful entry, their argument fails because Moore had no reasonable expectation of privacy on the open stairwell that connected his security gate to the public street. As discussed in Defendants' Opposition, the area between Moore's security gate and the street did not implicate the "curtilage" of his residence per the Fourth Amendment. See *e.g.*, *United States v. Santana*, 427 U.S. 38, 40-42 (1976) (holding that such an arrest does not implicate the Fourth Amendment because there is no reasonable expectation of privacy); *U.S. v. Vaneaton*, 49 F.3d 1423, 1426-27 (9th Cir. 1995) (holding that a warrantless arrest at a front door did not offend the Fourth Amendment because "[w]hen Vaneaton saw them through the window, he voluntarily opened the door and exposed both himself and the immediate area to them"); *U.S. v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) (holding that after a suspect voluntarily opens the door in response to a knock by police, "the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity" [alteration in original]). (Doc. No. 104 at p. 9-12). Here, the officers never passed the threshold of the security gate at the top of the stairs. Moore's assault on the officers took place outside of the security gate, on the open, public portion of the staircase. The officers' attempts to arrest Moore and the accompanying use of force took place on the open, public portion of the staircase where Moore had no reasonable expectation of privacy.

Further, even if the Court finds the officers' presence on Moore's stairs unlawful, which it was not, Moore's assaultive conduct towards the officers justified their presence and actions to prevent serious injury. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City v. Stuart*, 547 U.S. 398,

403 (2006).  Here, Moore's physical assault on the officers, from the position of advantage above them on the stairs, justified what would otherwise be illegal absent an exigency or emergency.

Plaintiffs' Opposition fails to address the arguments set forth in Defendants' moving papers regarding probable cause to arrest Moore outside of the question of unlawful entry.  The Court should grant summary judgment in favor of Defendants because probable cause existed to arrest Moore.

## II.     The Officers' Force was Reasonable Under the Fourth Amendment.

The parties agree that excessive force cases should be evaluated by: 1) assessing the intrusion on the Plaintiff's Fourth Amendment rights; 2) evaluating the government's interest in the use of force under the totality of the circumstances; and 3) balance the gravity of the intrusion against the government's need for the intrusion.  *Glenn v. Washington Cnty.,* 673 F.3d 864, 871 (9th Cir. 2011).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  As Defendants argued in their moving papers, as well as in Defendants' Opposition, Officer Cha's use of pepper spray and his firearm, as well as Officer Patino's use of the baton were reasonable.

Although the encounter between the officers and Mr. Moore began as an investigation regarding a restraining order violation, this encounter was a constantly evolving situation that Moore continued to escalate through his conduct.  The officers tried to reason with Moore and gain compliance through orders, which Moore ignored.  By the time Officer Cha used his pepper spray, Moore had committed criminal offenses in the presence of the officers as they attempted to conduct their investigation, and posed an imminent threat of danger to the officers.  The pepper spray proved to be ineffective in gaining compliance from Moore.  By the time Officer Patino used the baton, Moore had kicked at the officers and made aggressive advancements toward Officer Patino when Officer Patino attempted to retrieve the TRO from the stairs.  Officer Cha only resorted to using the firearm after the officers attempted lesser force unsuccessfully, and Moore further escalated the interaction by incapacitating Officer Patino by punching him in the face and knocking him down the stairs, and attempting to kick Officer Cha down the stairwell.

"[J]udges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Rayburn v. Huff*, 565 U.S. 469, 477 (2012). The body worn camera captures the undisputed material facts justifying the shooting. *See Scott v. Harris*, 550 U.S. 372, 379-380 (2007) (holding that any purported factual disputes will not bar summary judgment where the purported fact "is blatantly contradicted by the record," i.e., by "a video tape capturing the events in question"). Here, the officers had to make split second decisions to protect themselves from Moore. The officers acted reasonably under the totality of the circumstances. The Court should grant summary judgment in Defendants' favor.

### III.    Plaintiffs' First Amendment Retaliatory Arrest Claim Fails.

It is undisputed that a First Amendment Retaliatory Arrest claim requires a showing that the officers lacked probable cause. *Reichle v. Howards*, 566 U.S. 658, 663, 664-665 (2012). For the reasons set forth in Defendants' moving papers and above, probable cause existed to arrest Moore when the officers pepper sprayed him. Therefore, Plaintiffs' First Amendment Retaliation Claim fails.

Even if the Court finds that probable cause did not exist at the time the officers pepper sprayed Moore, which Defendants contend it did, Plaintiffs' First Amendment Retaliation Claim still fails. Plaintiffs' First Amendment claim relies on the argument that the officers arrested Moore because Moore swore at them and called them names. In support of that contention, Plaintiffs cite *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990). In *Duran,* the plaintiff, an intoxicated passenger in a car, was detained after making obscene gestures and yelling profanities from the car towards an officer while traveling late at night on a deserted road. *Id.* at 1374. The Court noted that the officer lacked any "legitimate, articulate reason" to detain the plaintiff. *Id.* at 1377. *Duran* is clearly distinguishable from the facts of this case because even before Moore began swearing at and insulting the officers, they had both reasonable suspicion to detain and probable cause to arrest him.

The officers came into contact with Moore as a result of Choy calling to report a violation of the temporary restraining order ("TRO"). As discussed in Defendants' opening brief, the officers had probable cause to arrest Moore for violating the TRO based solely on Choy's statements. "The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were

sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *U.S. v. Jensen,* 425 F.3d 698, 704 (9th Cir. 2005). The officers had a legitimate, articulable reason to detain and arrest Moore before he ever opened his mouth. The fact that Moore swore at the officers and called them names simply supported the officers' reasonable suspicion that Moore's denying violating the TRO was not credible.

Plaintiffs seek to ignore the totality of the circumstances, and instead seek to cherry pick specific facts to claim that the officers lacked probable cause. Although the officers' investigation began as a mere TRO violation, it quickly escalated to more. Because no facts support the assertion that the officers' arrest of Moore was in retaliation for Moore's speech, Plaintiffs' First Amendment claim fails. As such, the Court should grant summary judgment in favor of Defendants.

**IV.     The Officers are Entitled to Qualified Immunity.**

Defendants' opening brief set forth the reasons that the officers are entitled to qualified immunity. (Doc. No. 94 at p. 11-14). Plaintiffs' Opposition to Defendants' qualified immunity argument focuses on the "clearly established" prong of the qualified immunity doctrine. As such, Defendants will focus their reply on that prong.

The "clearly established law" should not be defined "at a high level of generality." *White v. Pauly,* 137 S. Ct. 548, 552 (2017); *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011). The law must be "particularized" to the facts of the case. *White*, 137 S. Ct. at 552. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. The Supreme Court explains that "use of force" is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Mullenix v. Luna,* 136 S. Ct. 305, 309 (2015).

**A.     Officer Cha is Entitled to Qualified Immunity for Using Pepper Spray.**

Plaintiffs rely on *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002), *Corderio v. United States,* 638 Fed. Appx. 634 (9th Cir. 2016), and *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) to argue that Officer Cha is not entitled to qualified immunity for using the pepper spray against Moore. In *Headwaters Forest Defense*, the facts involved peaceful

protestors being pepper sprayed to cause them to release themselves from self-releasing lock-down devices. *Headwaters,* 276 F.3d at 1127-1128. In *Corderio*, the plaintiff alleged that he was pepper sprayed while sitting "calmly" in his car with "his hands crossed." *Corderio,* 638 Fed. Appx. at 635. In *Young,* the plaintiff was pepper sprayed for refusing to get into his car during a traffic stop when he posed no physical threat to the deputy prior to the use of the pepper spray. *Young,* 655 F.3d at 1159-1160. These cases vary greatly from the facts of the case at issue here. Moore's combative behavior escalated in the seconds before Officer Cha's use of the pepper spray. Moore yelled, banged on the security gate with his hand, opened the gate, and advanced towards the officers from a position of advantage above them on the stairs. In response to the warning about the pepper spray, Moore responds, "fuck your spray!" Plaintiffs provide no support to demonstrate that Officer Cha's use of the pepper spray was in violation of any clearly established right. As such Officer Cha is entitled to qualified immunity for his use of the pepper spray.

### B. Officer Patino is Entitled to Qualified Immunity for the Baton Strikes.

Plaintiffs Opposition asserts that Officer Patino is not entitled to qualified immunity for the baton strikes because Moore was unreasonably pepper sprayed and therefore the officers should have expected a limited amount of resistance. (Doc. No. 106 at p. 17). Plaintiffs again rely on *Young,* contending that the use of the pepper spray was a sufficiently provocative trigger for Moore's limited right of resistance. In *Young,* the plaintiff rose to his feet and attempted to back away from the pepper spray which resulted in the deputy striking the plaintiff with his baton. *Young,* 655 F.3d at 1159-1160.

As discussed above, Officer Cha's use of the pepper spray was reasonable. Therefore, Moore was not entitled to continue his resistance. Even if the Court believes the pepper spray was unreasonable, which Defendants contend it was not, Moore's resistance was surely more than that set forth in *Young*. Here, following the pepper spray, Moore kicked at the officers and retreated into his home. He continued to be verbally combative with the officers and advanced toward Officer Patino as Officer Patino attempted to collect the TRO paperwork from the stairs. Moore refused to comply with every order given. Officer Patino warned "[g]et on the ground before you get batoned." As the officers ascended the stairs, Moore did not comply with their orders to get on the ground, and Officer Patino struck Moore twice in the legs with his baton in an effort to gain compliance. Plaintiffs provide

no support to demonstrate that Officer Patino's use of the baton was in violation of any clearly established right. As such Officer Patino is entitled to qualified immunity for his use of the baton.

### C. Officer Cha is Entitled to Qualified Immunity for the Shooting.

Plaintiffs' Opposition argues that Moore posed no immediate threat of harm to the officers and that Officer Cha used the firearm because they were losing a fistfight. This oversimplification of the facts fails to take into account the totality of the circumstances of this case. Moore had already attempted to kick the officers after being pepper sprayed. Moore incapacitated Officer Patino by punching him and causing him to fall down the stairs three seconds before the shooting, leaving Officer Cha with limited options to protect himself and Officer Patino. Moore then moved toward Officer Cha and raised up his right foot to kick Officer Cha down the stairwell. Moore, a large individual in a position of advantage, had already proven to be a physical threat before Officer Cha used his firearm. The officers had already attempted two forms of less intrusive force – pepper spray and the baton – to no avail. Moore left Officer Cha with no choice but to defend himself and his incapacitated partner.

As Defendants argued in their moving papers, *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 942 (9th Cir. 2017), supports a finding of qualified immunity here. Plaintiffs provide no authority to the contrary. This was not a situation where the threat perceived by the officers was speculative. Plaintiffs cannot meet their burden of showing that any binding precedent put Officer Cha on notice that shooting Moore to protect himself and his incapacitated partner clearly violated the Constitution. As such, Officer Cha is entitled to qualified immunity for the shooting.

## V. Plaintiffs Do Not Oppose Defendants' Motion for Summary Judgment on the *Monell* Claim.

Defendants moved for summary judgment on Plaintiffs' *Monell* claim. (Doc. No. 104 at p. 14-20). Plaintiffs' do not oppose Defendants' motion as it pertains to their *Monell* claim, (Doc. No 106 at p. 3 fn. 2). For the reasons set forth in Defendants' moving papers, the Court should grant summary judgment in favor of Defendants on the *Monell* claim.

## VI. Plaintiffs' Bane Act Fails.

Plaintiffs' Opposition identifies the Fourth Amendment as the right upon which their Bane Act

claim is predicated. As discussed above and in Defendants' moving papers, the officers had probable cause under the Fourth Amendment to arrest Moore. Additionally, the force used was reasonable under the Fourth Amendment. Plaintiffs' Bane Act claim fails on these grounds alone.

Further, a Bane Act violation cannot be established without proof that "the defendant commit[ted] the act in question with the *particular purpose* of depriving the citizen victim of his . . . right." *Cornell v. City and County of S.F.*, 17 Cal. App. 5th 766, 803 (2017) (emphasis added); see also 798 (referring to "the requisite level of scienter for Section 52.1 liability"). Thus, "in a setting where the plaintiff proved negligence, at most . . . there must be 'an additional showing of ill will or blameworthy conduct'" to prove a Bane Act claim. *Cornell*, *supra*, 17 Cal. App. 5th at 798 (quoting *Shoyoye v. County of L.A.*, 203 Cal. App. 4th 947, 958 (2012)). Plaintiffs' assertion that the officers called Moore out of his house to fight is unsupported by the evidence, as is any assertion that they had knowledge about his mental health condition. The evidence instead, supports the conclusion that the officers arrested Moore with probable cause, and the force used to do so was reasonable.

Assuming, *arguendo*, that Plaintiffs' evidence shows that unreasonable force was used by one of the officers, it would not preclude summary judgment on the Bane Act claim. Evidence of unreasonable force that is not egregious, i.e., excessive force without more, is insufficient to establish Bane Act liability because the test for excessive force is objective and the officer's subjective intent is immaterial. *See Susag v. City of Lake Forest,* 94 Cal. App. 4th 1401, 1414 (2002) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *Edson v. City of Anaheim,* 63 Cal. App. 4th 1269, 1272 (1998) (holding that a plaintiff asserting a battery cause of action against a police officer has the burden of proving that the officer used unreasonable force). Thus, even if there is a factual question about whether an officer's use of force was objectively reasonable, that alone is insufficient to establish the specific intent element of a Bane Act claim. *Cornell* 17 Cal. App. 5th at 798, 801; *B.B. v. County of Los Angeles*, 25 Cal. App. 5th 115, 133-134 (2018); *Bender v. County of Los Angeles* 217 Cal. App. 4th 968, 978-979 (2013).

Here, there was probable cause to arrest Moore and that the force used to arrest him was not

egregious. Plaintiffs cannot prove that either officer acted with the particular purpose of interfering with Moore's Fourth Amendment rights. Plaintiffs cannot establish their Bane Act claim. The Court should grant summary judgment in favor of Defendants.

### VII. Plaintiffs' State Law Claims Fail.

Plaintiffs agree that the state law test for tort liability is the same as the test for unreasonable force under the Fourth Amendment pursuant to *Hayes v. City of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013). In addition to arguing that the officers' force was unreasonable under the Fourth Amendment, Plaintiffs also argue that the additional factor of the officers' pre-shooting conduct contributed to the unreasonableness of the force. *Hayes v. County of San Diego,* 57 Cal. 4th 622, 632 (2013). As discussed in Defendants' moving papers, and above, the officers' use of force was reasonable under the Fourth Amendment. As such, Defendants focus now on Plaintiffs' contention that the officers' pre-shooting conduct was unreasonable. Plaintiffs' conclusory assertion that the officers "clearly wasted their time and distance, could have simply waited for back up, but instead charged at, provoked, cursed at and conducted themselves recklessly thereby creating a danger that Defendant Cha allegedly had to shoot his way out of." (Doc. No. 106 at p. 22). These contentions once again ignore the totality of the circumstances and the facts of this case. Moore punched Officer Patino causing him to fall down the stairs. Moore was attempting to kick Officer Cha at the time Officer Cha used his firearm. There was no time and distance option. There was no time to wait for backup. At the time the shots were fired, Moore had incapacitated Officer Patino and was attempting to incapacitate Officer Cha. Plaintiffs' unfounded, conclusory assertions regarding the officers' pre-shooting tactics are insufficient to create a material dispute of fact. As such, the Court should grant summary judgment in favor of Defendants.

Plaintiffs contend that California Government Code sections 820.6 and Government Code § 821.6do not apply to this case. Defendants disagree. The "good faith immunity" of section 820.6 is a state law statutory analogue to the federal doctrine of qualified immunity. *County of Los Angeles v. Superior Ct.*, 181 Cal. App. 4th 218, 231 (2009) (referring to "Government Code § 820.6 qualified immunity"); *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 239 (9th Cir. 1980) (noting similarities with federal qualified immunity). In support of Plaintiffs'

contention, they cite *Woods v. August,* 2018 WL 5841311 (N.D. Cal. October 9, 2018), where the Court found that there was a factual question for the jury as to whether the officers acted in good faith. Unlike in Woods, where the court found that there was a genuine issue of material fact regarding the threat that Woods posed to the officers and bystanders on the day he was shot, no such issue exists here. Here, Moore was a proven threat to the officers' safety at the time he was shot. As such, the officers are entitled to immunity under section 820.6.

A literal application of the language of the enactment of California Government Code section 821.6 establishes immunity on the part of the officers. *Johnson v. City of Pacifica,* 4 Cal. App. 3d 82, 85 (1970). Indeed, section 821.6 immunizes officers during an investigation. *Blankenhorn v. City of Orange,* 485 F.3d 463, 488 (2007); *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 756-57 (1997); *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1208-09 (1994). Here, the investigation was a fluid process that was deeply intertwined with the arrest. The officers' tactical conduct during the course of this investigation, and ultimate arrest, is subject to immunity pursuant to section 821.6.

**VIII.     Plaintiffs' ADA Claim Fails.**

Plaintiffs' Opposition fails to set forth facts to support their contention that the officers knew or should have known about Moore's alleged disability. Plaintiffs argue that because the officers "repeatedly pondered what was wrong with Moore, laughed at Moore when he started cursing at the garbage man and when Moore tried calling the police on the Defendant officers," and had been trained on how to make contact with people who are mentally ill, they should have reasonably known that Moore was suffering from a mental illness. (Doc. No. 106 at p. 23). Notably, Plaintiffs cite no authority to support their contention that such conduct provided the officers with notice of Moore's condition. Defendants disagree that the facts of this case resemble *Sheehan v. City and County of San Francisco,* 743 F.3d 1211 (2014). In *Sheehan*, the officers were called to assist the plaintiff's social worker in transporting the plaintiff to a mental health facility for an involuntary commitment. *Id.* at 1215. From the start, the officers in *Sheehan* knew the call involved an individual with a mental health condition. Here, the officers had no such knowledge. Therefore, *Sheehan* is clearly distinguishable from the standpoint of the officer's knowledge regarding mental health conditions.

It is undeniable that police officers encounter an array of behaviors in their daily duties. To

require officers to be able to identify mental health issues by conduct that may be attributable to a number of other factors, such as intoxication or anger, is unreasonable.  Here, no facts support the assertion that the officers knew Moore was a "qualified individual" under the ADA.  *See Kisela v. Hughes*, 138 S. Ct. 1148, 1150, 1154 (2018) (holding that there were insufficient indications that the suspect was mentally ill because the officers, responding to an emergency call about a woman behaving "erratically" with a knife, only saw the suspect holding a large knife, taking steps toward another nearby woman, and refusing orders to drop the knife); *Buchanan v. City of San Jose*, No. 17-16100, 2019 WL 3384766, at *1, 3 (9th Cir. July 26, 2019) (holding that officers responding to an emergency call about a man threatening his family with a knife were not "on notice" that the suspect was "mentally ill" if the officers only saw the suspect holding a knife while standing next to two women, rapidly advancing on the officers, and ignoring their orders to stop); *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1769-1770 (2015) (addressing claim under the ADA predicated on officers with actual knowledge that suspect at a home for the mentally ill was "gravely disabled" because of psychiatric problems).Without any information about an individual's disability, an officer cannot be required to provide a reasonable accommodation.

      Even if the Court assumes that the officers had knowledge of Moore's disability, which they did not, the ADA nonetheless allows the officers to use force against Moore, a dangerous suspect who resisted arrest and used violence against the officers.  Title II of the ADA "does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a *direct threat* to the health or safety of others."  28 C.F.R. § 35.139(a) (emphasis added).  "While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public."  *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000); *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (holding that "exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment").  Once Moore became physically assaultive, the officers were entitled to use force against him to protect themselves and take Moore into custody.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Defendants' moving papers, the Court should grant Defendants' Motion for Summary Judgment.

DATE: November 20, 2020

DENNIS J. HERRERA
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
CHRISTOPHER B. WHITMAN
KELLY COLLINS
Deputy City Attorneys

By: */s/ Kelly Collins*
KELLY COLLINS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
KENNETH CHA and COLIN PATINO