**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com

**ADANTE POINTER, ESQ., SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Wells Fargo Center
1901 Harrison St., Suite 1140,
Oakland, CA 94612
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEO MOORE, et al.<br><br>           Plaintiffs,<br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>           Defendants. | CASE NO.: 3:18-cv-00634-SI<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO THEIR MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>HON. SUSAN ILLSTON<br><br>Date:   Dec. 4, 2020<br>Time:   10 a.m.<br>Ctrm:   1, 17th Fl (Zoom) |

## I. INTRODUCTION

The focal point of Defendants' opposition relies on Defendants' contention they had probable cause to arrest Decedent Moore for a violation of the temporary restraining order of a fifty yard stay away. The undisputed facts demonstrate that neighbor Christopher Choy offered Defendants no information to suggest Moore violated that term, Defendants did not independently collect any evidence to suggest he violated the order and Moore explained that he did not violate the order as he was only taking out his trash (which was corroborated when the garbage truck came and collected his trash in front of officers).

## II. LEGAL STANDARD

Defendants argue that Plaintiffs may not move on the legal issues of probable cause, unlawful seizure and trespassing because Fourth Amendment unlawful entry was not a "claim" in their Complaint. Defendants cite to *Rivera v. City of Santa Ana*, 2011 WL 717369, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); and *Klein v. Boeing Co.*, 847 F. Supp. 838, 844 (W.D. Wash. 1994), but none of these cases address or describe such a claim as unlawful entry. Plaintiff is not aware of an unlawful entry claim and could not find one in the Model Jury Instructions. Regardless, Defendants misapprehend Plaintiffs' motion.

Plaintiffs moved to establish that Defendants' were unlawfully on Plaintiff's porch, made an unlawful seizure and used excessive force as a matter of law. (Pltf Motion, Doc. 99, p. 2, 14; *See also* Plaintiffs' Complaint, Doc. 1, p. 10 – COA: Unlawful Seizure; COA 2: Excessive Force). In Plaintiffs' claim for unlawful seizure, it is alleged that "Defendants lacked the requisite probable cause to arrest [Moore]." (Id.) Each of these legal issues are a *part* of a claim or defense presented in Plaintiffs' motion.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

1

Rule 56 permits a party to "move for summary judgment, identifying each claim or defense — or ***the part of each claim or defense*** — on which summary judgment is sought." FRCP 56 (a). *See also Advisory Committee Notes on Rules* – 2010 Amendment ("The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.").

Here, Defendants' trespass, unlawful presence on Moore's property, refusal to leave and lack of probable cause speaks to both parts of Plaintiff's claim that Defendants made an unlawful seizure and used excessive force as well as Defendants' defenses.

### A. DEFENDANTS LACKED PROBABLE CAUSE

Defendants' primary argument is that Defendants had probable cause to arrest Moore for violation of the temporary restraining order before any use of force occurred. (Def. Opp., Doc. 104, p. 20). Defendants admit that under state law Defendants did not have probable cause to arrest Moore for a misdemeanor committed outside their presence, but argue that under Fourth Amendment analysis that the state law's prohibition does not apply. Plaintiff agrees that under the Fourth Amendment the state law's prohibition for the validity of the arrest will not control (*People v. McKay*, 27 Cal. 4th 601 (Cal. Supreme Court 2002)), but Plaintiffs note that, even so, Defendants did not have probable cause to make an arrest under the Fourth Amendment based on the undisputed facts.

It is undisputed that Christopher Choy did not have the opportunity to speak with Defendant Patino other than to inform him that he heard banging on the wall and provided Defendant a copy of the served temporary restraining order. Shortly after, Defendant left without being able to ask any follow-up questions and learned from Moore that he was only taking out the trash. Defendants' only independent evidence confirmed Moore's version (because the garbage truck came shortly after), and

conducted no further investigation. When Defendants arrived Moore was not banging on the wall, but in his house watching television.

Probable cause exists when "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).

Critically, the temporary restraining order was a *stay away* order (for fifty yards), but the only information that Defendants received was that Moore had been banging on a wall, not that he had been within fifty yards of Christopher Choy. (Admin. Mtn. to File Under Seal, **Ex. 1** – Request for Civil Harassment Restraining Order). Therefore, based on even Choy's statement that was provided to officers, Defendants did not have sufficient information to conclude that Moore violated the restraining order. Furthermore, Defendants did not have probable cause to make even an *implied* citizen's arrest, because based on the portion of the restraining order they read and the information Choy provided about the alleged violation – *Choy* did not have probable cause to make a citizen's arrest. *Johanson v. Department of Motor Vehicles*, 36 Cal. App. 4th 1209, 1216 (1995) ("[a] lawful warrantless arrest by a citizen also requires that the misdemeanor occur in the citizen's presence").

Ironically, Defendants did not even appear to know what the order said when they first approached Moore's door and incorrectly stated the orders' terms before they approached the door a second time. ██████████████████████████████████████████████████

██████████████████████████████████████ Here, under the totality of the circumstances known to the Defendants, a prudent person would ***not have*** concluded that there was a fair probability that Moore had violated the 50 yard stay away, because they had no information from any witness he had and Moore said he only put out his trash cans (which was corroborated when the garbage man actually came). Instead, Moore's conduct and the independent evidence confirmed the

veracity of Moore's statement and dissipated probable cause and even reasonable suspicion that he had violated the restraining order.

Still Defendants argue that, despite having no independent evidence that Moore was violating the restraining order and, quite frankly, not even having read the restraining order when they were "enforcing" it, that Moore's discontent with the officers ringing his doorbell at 4 a.m. confirmed that he was lying and had violated the restraining order was enough to substantiate probable cause. Defendants cite to *People v. Ibarra*, 156 Cal. App. 4th 1174 (2007) for this proposition that Moore's yelling indicated a guilty motive, which would support probable cause. But *People v. Ibarra* did not address probable cause *whatsoever*. (Id.) In *Ibarra,* defendant had appealed several jury instructions after being convicted of assault in a criminal case and argued that the criminal instruction on motive improperly suggested to the jury they had to decide the case, that the word motive was untethered to the crime he was suspected of, shifted the burden of proof to the criminal defendant, and that the instruction suggested that he may be found guilty on motive alone. (Id. at 1192-1193). The appellate court made no analysis of whether or not a police officer may consider motive and a suspect's yelling to justify probable cause; in fact, there is no analysis of probable cause or mention of it at all. (Id.)

Instead, what is clear from the body-camera, Choy's statement and the undisputed record is that Moore had simply walked out to put his trash on the curb and returned into his house. Defendants had no information from Choy or Moore that he had violated the stay away order, nonetheless they violently arrested him without probable cause which is a *legal issue* properly before the Court since Plaintiffs have an unlawful seizure claim under the Fourth Amendment.

**B. FRONT PORCH IS CURTILAGE**

Defendants argue that Moore's front porch was not "curtilage" with a reasonable expectation of privacy as contemplated and protected under the Fourth Amendment.

The first argument contends that the encounter on his stairs/front porch had no reasonable expectation of privacy (it is obvious from the body-worn camera that Moore was standing on his front porch and officers stood a stair or two below) did not implicate the Fourth Amendment because "the stairway is available for use by the public and delivery services to access the front door, and there is no evidence that Mr. Moore took any affirmative steps to shield or protect his activities on the stairs from public view." (Def. Opp., p. 10).

Defendants rely heavily on *U.S. v. Dunn* for their analysis which was considering whether a barn 50-60 yards from the resident's house merited a reasonable expectation of privacy. *United States v. Dunn*, 480 U.S. 294 (1987). In *Dunn*, it was easy for the Court to resolve the question of privacy, because the residents did not use the barn as part of their life activities. (Id.) However, the Court reaffirmed the driving notion of curtilage "as the area around the home to which the activity of home life extends—is a familiar one easily understood from our daily experience." (Id. at 302 quoting *Oliver v. U.S.*, 466 U.S. 170, at 181 (1984). Here, Moore's stairway and front porch were clearly the area to which the activity of home life extends. Indeed, Moore had just completed the activity of taking out his trash can and felt offended at the Defendants staying on his stairs. Furthermore, the stairwell is set between large walls and was only readily visible to the public if you actually approached the stairway or lined yourself up with the entrance. Otherwise, the stairway and the front porch are generally not visible.

Defendants also cited to *Crapser* where the Ninth Circuit found the fact that the occupant voluntary exited the house after officers knocked on the door was indicative of a consensual encounter. *U.S. v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007). The Ninth Circuit explained that it was a consensual encounter and there was no expectation of privacy because the officers had availed themselves to the right of all passersby to enter the curtilage of a person's home and knock on the

door. (Id.). The Ninth Circuit then **contrasted** this encounter to *Orhorhaghe v. INS*, 38 F.3d 488 (9th Cir.1994) where the Ninth Circuit did find an *unlawful seizure*.

In *Orhorhaghe v. INS*, the Ninth Circuit found a seizure because "officers positioned themselves so as to be certain the defendant could not escape or leave, the officers made a deliberate effort to reveal their concealed firearms; the encounter occurred in a non-public setting, and the officers acted in an aggressive manner suggesting that compliance would be compelled." *U.S. v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) citing to *Orhorhaghe v. INS*, 38 F.3d 488 (9th Cir.1994).

In *Orhorhaghe v. INS*, the Ninth Circuit found the encounter occurred in a nonpublic setting because the area was "private property shielded from the view of the vast majority of the public." *Orhorhaghe*, 38 F.3d 488, 495. Furthermore, the officers "acted in an officious and authoritative manner that indicated that Orhorhaghe was not free to decline his requests." (Id.) The Ninth Circuit reaffirmed that a seizure can occur "when the officer merely indicates by his authoritative manner that the person is not free to leave." (Id.) The Ninth Circuit stated even the tenor of the agent's instruction was not that of "every citizen" addressing questions to fellow citizens; it was brusque and authoritative and appeared to give Orhorhaghe no option to refuse to comply. (Id.)

Here, Defendants were much more forceful than merely using an "authoritative manner". Defendants refused to leave Plaintiff's stairway despite it being private property, threatened to kick in Moore's door, cussed at him and told him he was under arrest. Therefore Defendants' conduct constituted a seizure, and violated Moore's reasonable expectation of privacy when he ordered them off his property.

**C. DEFENDANT CHA USED EXCESSIVE FORCE AS A MATTER OF LAW**

Defendants argue that Cha's use of pepper spray was reasonable because Moore was preventing officers from lawful tasks and cited *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018) which is inapposite.

In *Felarca*, officers *were in public* executing lawful orders to disperse unlawfully erected tents on a university campus. *Felarca*, 891 F.3d at 818. The officers were *outnumbered* and after repeated unsuccessful lawful orders to move out of their way and being physically provoked, then the officers used pepper spray. (Id.)  In contrast here, Defendants had no right to be on Moore's stairway, he already cooperated with their investigation and Defendants had no right to enter his house. Therefore, Defendants had no right to use force to keep him from stepping down onto his stairway – his own private property – and demand Defendants to leave. Tellingly, the officers had already descended the stairs once to leave because their right to investigate had dissipated but re-ascended the stairs because Defendant Cha wanted to fight and/or provoke Moore.

Unlike *Felarca*, Defendants did not have the right to arrest Moore or be on the property and it was apparent from body camera video that they did not intend to arrest him at that point. Instead once Moore stepped down from his porch and demanded Defendants leave, Defendant Cha pepper-sprayed Moore punitively because Moore had called him a derogative term. Therefore, Moore was not actively resisting and nevertheless Defendants used intermediate force against him.

As an aside, Defendants raised for the first time that Moore was creating a public disturbance and threatening officers, but Moore was simply demanding that they leave his property since they were refusing to leave. It is the ultimate irony to arrest a person for demanding officers who are trespassing to leave and an affront of civil rights if a citizen can be arrested for vocalizing loudly his protests of a government actor's wrongful conduct *on his own property.*

**D.  PLAINTIFFS HAVE STANDING TO BRING THEIR MOTION**

Defendants make the argument that Plaintiffs are not successors-in-interest because they have not filed an affidavit and a living sibling of the Decedent exists, but made no objection to Plaintiffs' substitution of party to take over Moore's survival claims. (Doc. 68 and 71). In order to erase all doubt, Plaintiffs have filed affidavits of successor-in-interest. (Doc. 110 - Affadavits of Cleo & Loyce Moore). Rule 19 is not implicated because Plaintiffs are successors-in-interest as the biological parents and Decedent Moore was not married and had no children. Cal. Prob. Code Section 6402. Siblings are only implicated when there is no spouse, children, parents *and* grandparents. (Id. at subsection (f)).

To the extent that Defendants argue that the Complaint should have been amended to identify which claims are survival – all of them are since it was Decedent's Complaint. Again, Defendants never objected to the substitution of party which occurred as a result of Moore's death and substituted Plaintiffs in the place of Decedent Moore. Furthermore, Plaintiffs properly and promptly filed a Suggestion of Death and Motion to Substitute Parties so that Plaintiffs could overtake Decedent's survival claims. (Doc. 67-68 and 71). If the Court wishes, Plaintiffs will file an amended Complaint to describe their substitution to addend the Court's order of their substitution. Notably, the Court found under Rule 25 found "plaintiff's counsel filed a motion to substitute in Mr. Moore's biological parents – Loyce Amos Moore and Celo Davis Moore – in light of Sean Moore's death pursuant to Federal Rule of Civil Procedure 25. No opposition has been filed and defense counsel did not state any objection to the substitution during the February 14, 2020 case management conference." The Court did not order Plaintiffs to file an amended Complaint to describe the substitution.

Although Defendants referred to the Court's order to amend the Complaint from September 4, 2020 Case Management Conference, the order related to Plaintiffs' individual claims for wrongful death. (Buelna Decl.). However, Plaintiffs could not amend to include those state causes of action,

because they had not presented a late claim to the City. Cal. Gov. Code Sections 911.2, 911.4, 945.4, 946.6. Plaintiffs did not discover the cause of Moore's death until after the six-month government claim tort period so Plaintiffs must present a late claim request before January 20, 2021 (one year from Decedent's death). Cal. Gov. Code Sections 911.2, 911.4, 945.4, 946.6. Once Plaintiffs have either received an approval from CCSF to file a late claim or a court order to grant the late claim, Plaintiffs will amend their complaint accordingly.

Finally, Defendants argue that Plaintiff Loyce Moore should have moved to have a representative to bring forth his claim and cite Rule 25, but cite no caselaw to support their contention that an invalid person in hospice care cannot bring a survival claim or is incompetent as contemplated under Rule 25. In particular, Defendants asserted that Rule 25 prohibits a person to "pursue their claims unless they file a motion with the court requesting that their representative be allowed to pursue their claims." (Def. Opp., p. 7). Defendants cite no case law and Rule 25 does not prohibit a person in hospice care from pursuing a claim.

### III. CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request the Court to GRANT their motion.

Date: November 20, 2020                                  Respectfully submitted,

**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**

/s/ Patrick Buelna
PATRICK M. BUELNA
COUNSEL FOR PLAINTIFFS